**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 3 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

In Re:  LARRY PRESTON MOORE,

    Debtor.

---

STEVE PANALIS; CATHY PANALIS,

    Plaintiffs - Appellees,

v.

LARRY PRESTON MOORE,

    Defendant - Appellant.

No. 02-6279

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 02-CV-272-W)**

---

Patricia D. MacGuigan (Michael Paul Kirschner with her on the briefs) The Kirschner Law Firm, P.C., Oklahoma City, Oklahoma for Defendant - Appellant.

Stephen Jones (Alice Mulvaney Link with him on the brief) Stephen Jones & Associates, Enid, Oklahoma for Plaintiffs - Appellees.

---

Before **MURPHY**, **PORFILIO** and **HARTZ**, Circuit Judges.

---

**PORFILIO**, Senior Circuit Judge.

This is an appeal from a decision of the district court sitting as an appellate court in bankruptcy. Holding a debt based on a state court judgment for intentional fraud was not dischargeable under 11 U.S.C. § 523(a)(6), the district court reversed a bankruptcy court's contrary judgment. We conclude the bankruptcy court's decision was correct and reverse the judgment of the district court.

Steve Panalis was an independent oilfield contractor engaged by L.P. Moore, Inc., a Colorado corporation owned by Defendant Larry Preston Moore, to work oil wells in Oklahoma. Mr. Panalis was severely injured in an accident that resulted from actions he had undertaken on his own and without the knowledge or participation of Mr. Moore. Asked to move a large storage tank by the owner of the land upon which it was stored, Mr. Panalis and his helper, apparently in the process of doing so, allowed trapped gas to escape and explode. The helper was killed, and Mr. Panalis sustained severe burns over a substantial portion of his body. Later, absolving Mr. Moore of any responsibility for what happened in the field, Mr. Panalis stated, "I never said Larry [Moore] had anything to do with the explosion."

Mr. Panalis and his wife filed an action to recover damages against Mr. Moore in Colorado state court alleging fraud based upon a statement Mr. Moore made about his insurance coverage. After trial, the Colorado jury determined: 1) Mr. Moore made a false representation to Mr. Panalis that Mr. Moore carried insurance (the type of which is undefined) that would cover Mr. Panalis; 2) Mr. Moore knew that representation was

false at the time he made it; 3) the representation was made with the intent to deceive; 4) Mr. Panalis justifiably relied on the representation, and 5) Mr. Panalis *suffered damages as a result of the false representation*.  (emphasis added).  The jury awarded damages to Mr. Panalis in the amount of $6,584,000 and Mrs. Panalis in the amount of $150,000.  Those amounts were increased by post-judgment interest at the time the present action arose.

Mr. Moore later filed a petition for bankruptcy relief in the Western District of Oklahoma.  As creditors, Mr. and Mrs. Panalis filed an action to determine the dischargeability of the debt created by the Colorado verdict.

Although the bankruptcy court ruled in favor of Mr. Moore, holding the fraud verdict did not represent a debt for a "willful" injury under § 523(a)(6), on appeal, the district court disagreed.  Relying upon **Kawaauhau v. Geiger**, 523 U.S. 57, 61-62 (1998), the district court held the intentional deliberate act required by § 523(a)(6) was "Moore's fraudulent statement."  Because the state jury found "Moore acted with the intent to deceive [and] Moore made the false representation 'with the intent' that it be relied upon," the district court concluded Mr. Panalis' reliance "caused" damage to him.   The court then reasoned, *citing* **White v. Muniz**, 999 P2d 814, 816 (Colo. 2000), because Colorado considers fraud an intentional tort, the "state court judgment establishes that Moore's statement was made with intent to injure."  Finally, because the result of the

fraud was a willful act, an intent to cause injury, the court concluded the jury verdict is not dischargeable under § 523(a)(6). Mr. Moore has appealed that ruling.

Mr. Moore takes issue with the district court's interpretation of **Geiger** and argues although he made a fraudulent statement about his insurance coverage, "he did not intend to physically injure Panalis." He contends, therefore, Mr. Panalis' injury was a result of the explosion, not Mr. Moore's statement about his insurance coverage.[1]

Mr. Panalis, however, reprises the district court's analysis, contending because fraud is an intentional tort under Colorado law and requires that a tortfeasor intend some "harm or offense," the debt created by the Colorado jury verdict must be the functional equivalent of a "willful and malicious injury" within the meaning of 11 U.S.C. § 523(a)(6). Therefore, that debt cannot be discharged.

We analyze this appeal upon the same basis employed by the district court. We subject the bankruptcy court's legal decision to *de novo* review and its factual findings to a clearly erroneous test. **Lampe v. Williamson**, 331 F.3d 750, 753 (10th Cir. 2003); **Miniscribe Corp. v. Harris Trust Co. of Cal.**, 309 F.3d 1234, 1240 (10th Cir. 2002).

Proper analysis of this case must begin with the language of § 523(a)(6) which states:

---

[1] Conceivably, Mr. Moore could have argued Mr. Panalis' physical injury was the consequence of his own negligence, but he did not.

> [A] discharge [in bankruptcy] does not discharge an individual debtor from any debt . . . for *willful and malicious injury* by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(6) (emphasis added). Consequently, the question before us is whether the Colorado verdict awarding damages for fraudulent misrepresentation constitutes a debt for a "willful and malicious injury" to Mr. and Mrs. Panalis. Put another way, did the "damages [suffered] as a result of the false representation" include the physical injury sustained by Mr. Panalis? We think not.

We initially recognize analysis of this case is made difficult by two circumstances. First, there is no doubt Mr. Panalis has been horribly injured, and he wants Mr. Moore held accountable for that injury. Second, a state jury has found the fraud committed by Mr. Moore resulted in damages in excess of $6 million. Although there is an apparent disconnection between the act of fraud and the physical injury to Mr. Panalis brought about by his own hands, the Colorado verdict cannot be ignored. It created a debt which Mr. Moore seeks to discharge in bankruptcy. Also compounding resolution of the case is the natural sympathy that arises from Mr. Panalis' gruesome injuries. Although that sympathy seemingly favors compensation, the limits of the law preclude it.

The essence of this case arises from basic tort law. It is a fundamental principle that a person who commits an intentional tort is liable for the consequences of his acts. However, it does not follow that everything that happens to the victim following the commission of the tort was *intended* by the tortfeasor. As noted by the Court in ***Geiger***,

"[i]ntentional torts generally require that the actor intend 'the *consequences* of an act,' not simply '*the act itself*.'" *Id*. at 61-62 (quoting Restatement (Second) of Torts § 8A, Comment a, p. 15 (1964)) (emphasis in original).

As the Court pointed out, if a tortfeasor was liable for *unintended* injuries,

> [e]very traffic accident stemming from an initial intentional act - - for example, intentionally rotating the wheel of an automobile to make a left-hand turn without first checking oncoming traffic - - could fit the description. A "knowing breach of contract" could also qualify. A construction so broad would be incompatible with the "well-known" guide that exceptions to discharge "should be confined to those plainly expressed."

*Id.* at 62 (internal citations omitted). Moreover, § 523(a)(6) pertains to "only acts done with the actual intent to cause injury," and "non-dischargeability takes a deliberate or intentional *injury* not merely . . . a deliberate or intentional *act* that leads to injury." *Id.* at 61 (emphasis in original).

Here, the jury was seemingly motivated to award damages because it determined one of the consequences of Mr. Moore's intentional fraud was an injury sustained by Mr. and Mrs. Panalis. However, that injury had to have been the loss they suffered because Mr. Moore had no insurance available to compensate them. Yet, the jury did not specifically find that loss included the physical injuries suffered by Mr. Panalis or that Mr. Moore intended those injuries. Nothing in the record before us justifies such a conclusion. Although the verdict manifests a finding Mr. Moore "made the [false] representation with the intent that [Mr. Panalis] act or decide not to act, in reliance on the

- 6 -

representation,"[2] that is not a finding that the false representation was made with the intent that Mr. Panalis mishandle an oil storage tank causing the explosion that injured him.

Indeed, by its own terms, the verdict established only that Mr. Moore intended to *deceive* Mr. Panalis. That intent to deceive is far from an intent to willfully and maliciously physically injure Mr. Panalis. It is unquestionable that the physical injuries were at best only incidental to Mr. Moore's fraud. The incidental nature of those injuries is underscored by the fact that they were clearly caused by the negligence of Mr. Panalis.

Thus, any analysis of whether the jury verdict resulted in a nondischargeable debt must distinguish between the injuries that resulted from fraud and those, if any, which were caused by a willful and malicious injury to the person of Mr. Panalis. Only the latter will sustain a judgment of nondischargeability under § 523(a)(6).

As the court instructed in **Geiger**,

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury* not merely a deliberate or intentional *act* that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury."

*Id.* (emphasis in original).

The district court overlooked the criticality of the terms "willful" act and "malicious injury" in § 523(a)(6). Without proof of *both*, an objection to discharge under

---

[2] Jury instruction 14, Stipulated supplemental record.

that section must fail.  For example, in ***Mitsubishi Motors Credit of America, Inc. v.***

***Longley (In re Longley)***, 235 B.R. 651, 657 (B.A.P. 10th Cir. 1999), the court held, to

constitute a willful act under § 523(a)(6), the debtor must "desire . . . [to cause] the

consequences of his act or . . . believe [that] the consequences are substantially certain to

result from it." ***Id.*** at 657 (quoting Restatement (Second) of Torts, § 8A (1965)).  Also, in

***Hope v. Walker (In re Walker)***, 48 F.3d 1161, 1164 (11th Cir. 1995), the court concluded

the term "malicious" requires proof "that the debtor either intend the resulting injury or

intentionally take action that is substantially certain to cause the injury." *See also*

***Markowitz v. Campbell (In re Markowitz)***, 190 F.3d 455, 462-63 (6th Cir. 1999)

(nondischargability under § 523(a)(6) requires proof of an intent to do harm, not just an

intentional act).[3]

Upon this predicate, we conclude the district court's analysis was incomplete.

Although recognizing the nature of the verdict and the Colorado law of fraud, it did not

---

[3] Mr. Moore additionally makes the telling argument that in relying upon the Colorado verdict, the district court failed to make a complete analysis of its full implications.  If there be any question of whether that jury found Mr. Moore intended the physical injury of Mr. Panalis, it is reasonable to assume it would have returned a verdict for punitive damages.  Indeed, it was instructed if it found Mr. Moore acted in a "malicious" and "willful" manner it could award punitive damages.  Having failed to do so, it must be concluded the jury found an absence of malice or willfulness in Mr. Moore's conduct.  Mr. Panalis argues the presumption is erroneous because the jury was instructed it "may award" punitive damages.  That argument is not persuasive.  Read in context, the word "may" was used by the trial court to avoid any implication it believed the requirements of malice and willfulness had been met or that the court favored the return of punitive damages.  Thus, the argument has scant logic.

correctly apply that recognition to the Bankruptcy Code. The Code must govern the outcome here.

In the context of this case, the Code makes inescapable the principle that unless a debt is the result of a willful and malicious act intended to do injury to a person, the debt is discharged. Having failed to prove, either in the Colorado court or in the Bankruptcy court, that Mr. Moore willfully and maliciously intended to cause his physical injury, Mr. Panalis was not entitled to an exception from discharge.

The motion to dismiss for lack of jurisdiction is **DENIED**. *See Clough v. Rush*, 959 F.2d 182, 185-86 (10th Cir. 1992). The Stipulation of the Parties Supplementing the Record is **RECEIVED**. The Appellant's motion to file an additional supplemental record is **DENIED**. The judgment of the district court is **REVERSED and REMANDED WITH INSTRUCTIONS** to enter judgment in accordance with this opinion.