In re Monte J. SHARP, Debtor.

Debbie Rinehart, Jack Blair, and David Mask, Appellants,

v.

Monte J. Sharp, Appellee.

BAP No. WO–06–013.
Bankruptcy No. 05–41000–RLB.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Filed Jan. 22, 2007.

Doneen Douglas Jones (Terry W. Tippens with her on the brief) of Fellers, Snider, Blankenship, Bailey & Tippens, P.C., Oklahoma City, Oklahoma, for Appellants.

James B. Brunson of Central Law Office, P.C., Norman, Oklahoma, for Appellee.

Before McFEELEY, Chief Judge, NUGENT, and BROWN, Bankruptcy Judges.

McFEELEY, Bankruptcy Judge.

Appellants, Debbie Rinehart, Jack Blair, and David Mask, among others (hereinafter, referred jointly as "Appellants"), appeal an order of the bankruptcy court of the Western District of Oklahoma, arguing that the bankruptcy court erred when it concluded that Monte J. Sharp ("Sharp") was a farmer as defined in 11 U.S.C. § 101(20) and therefore exempt from involuntary proceedings. For the following reasons, we affirm.

## I. Background

Sharp owns and leases almost 2000 acres of land in northwest Oklahoma for his cattle business. On his property, he maintains pens for 3200 head of cattle, and acreage for wheat and forage crops. He also owns tractors and other farm related equipment. Sharp states that his business is to purchase young cattle and transport them to his property for thirty to forty-five days. He preconditions them by teaching them to eat and giving them shots, then he transports them to feed lots for eventual sale.

During 2004, Sharp bought cattle from various ranchers and sale barns. In addition, he acted as an order buyer for one customer, Dean Goll, for which he received commissions. An order buyer is a middleman between the purchaser and the seller of cattle. Sharp is not registered as an order buyer with the government, and his tax returns reflect no other such commissions, nor in 2004 did he receive any 1099 forms indicating such commissions.

Appellants filed an involuntary Chapter 7 bankruptcy petition against Sharp on October 27, 2005. In his answer filed on November 17, 2005, Sharp alleged that he was a farmer and immune from an involuntary petition under 11 U.S.C. § 303.[1] On December 15, 2005, Sharp filed a "Motion to Dismiss Involuntary Chapter 7 Petition and 11 USC § 303(I) Motion for Sanctions With Brief in Support." In opposition, the Appellants maintained that Sharp did not obtain 80 percent of his income from farming operations but rather derived his income from commissions as an order buyer.

The Motion was heard February 1, 2006. At the hearing, the following people testified: Sharp, Debbie Rinehart, and Ann Payne ("Payne"). Payne testified for the Appellants as a certified public accountant and a certified insolvency and reorganization advisor. Principally, she testified that based upon her review of Sharp's financial records, he could not have derived 80 percent of his income from farming. Dean Goll had been subpoenaed by the Appellants to testify but was unable to do so as he was in the hospital. The Appellants made the following proffer with respect to Goll's testimony:

---

**1.** All future statutory references are to Chapter 11 of the United States Code unless otherwise noted.

[I]n 2004 [Goll] had between 10 and 20 transactions with Mr. Sharp, and that in every one of those transactions Power Genetics was the buyer of the cattle back from him, and that those cattle were also never sent to Mr. Sharp's property, that they were sent to Triple C Feeders, where they were grazed.

And the basic proffer is that he believed at the time that Monte Sharp was affiliated with Power Genetics, and that the cattle being—being sold under those contracts were actually being sold to Power Genetics.

Transcript of Proceedings at 147–48 *in* Appellants' Appendix, Vol. I, at 271–72. Subsequently, the Appellants moved for Goll's deposition to be admitted in lieu of his testimony. The Appellants also asked that their counsel, Terry Tippens ("Tippens") be permitted to testify in rebuttal to Sharp's testimony concerning the industry standards with regard to the cattle business. Although Sharp had been listed in the pretrial order as a witness, Appellants argued that Sharp's testimony constituted an "unfair surprise" as they had thought that Sharp would not testify because during Sharp's deposition, on the advice of counsel, Sharp invoked the Fifth Amendment and declined to answer such questions.[2] Alternatively, the Appellants argued for a continuance of the hearing on the grounds that they should be permitted to call a rebuttal expert witness. The court denied both motions.

On March 1, 2006, the bankruptcy court entered an order granting Sharp's motion to dismiss the case.[3] In the Memorandum Opinion, the court concluded that the best evidence of the source of Sharp's income was his tax return where virtually all of his

income was listed as farming income on schedule F. In addition, the bankruptcy judge stated that were he to consider the totality of the circumstances he would come to the same conclusion, as he found Sharp's testimony credible and the weight of the evidence supported his contention that he was a farmer. This appeal timely followed. The parties have consented to this Court's jurisdiction because they did not elect to have the appeal heard by the United States District Court for the Western District of Oklahoma. 28 U.S.C. § 158(c)(1); Fed. R. Bankr.P. 8001; 10th Cir. BAP L.R. 8001–1.

## II. Discussion

■ Pursuant to § 303(a), an involuntary petition may be commenced "only under Chapter 7 or Chapter 11 of this Title, and only against a person, except a farmer...." 11 U.S.C. § 303(a). Section 101(20) defines a farmer as follows:

[A] person that received more than 80 percent of such person's gross income during the taxable year of such person immediately preceding the taxable year of such person during which the case under this title concerning such person was commenced from a farming operation owned or operated by such person.

11 U.S.C. § 101(20). The term "farmer" incorporates the definition of "farming operation." A farming operation is defined as including:

farming, tillage of the soil, dairy farming, ranching, production or raising of crops, poultry, or livestock, and production of poultry or livestock products in an unmanufactured state.

---

**2.** At the time the deposition was taken there were criminal charges pending against Sharp regarding his operations in 2005.

**3.** There is nothing in the docket indicating that Sharp has pursued further the motion for sanctions included in his motion to dismiss.

11 U.S.C. § 101(21). The definition of "farming operation" does not provide an exclusive list of all farming activities and is not limited to the specific activities delineated in the statute. *In re Armstrong*, 812 F.2d 1024, 1026 (7th Cir.1987); *Watford v. Fed. Land Bank of Columbia (In re Watford)*, 898 F.2d 1525, 1527 (11th Cir.1990). "This definition is to be construed liberally in order to further Congress' purpose of helping family farmers to continue farming." *Watford*, 898 F.2d at 1527. The bankruptcy court found that under these provisions, Sharp was a farmer. The Appellants argue that this conclusion was in error.[4]

■■■ The Appellants first argue that the bankruptcy court applied the wrong legal test when examining Sharp's income for the purpose of determining whether eighty percent of that income stemmed from farming. The issue of which test should be applied in examining an individual's income is a question of law. Questions of law we review *de novo*. *De novo* review requires an independent determination of the issue, giving no special weight to the bankruptcy court's decision. *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

Two tests have been employed by bankruptcy courts when examining debtor's income for the purpose of determining what percentage of that income is from farming. The first test looks at the extent to which the income in question bears a relationship to the debtor's farming activities prescribed by the words of the statute. *Armstrong*, 812 F.2d at 1027–29. Under this test, courts use the definition of gross income found in the Tax Code at 26 U.S.C. § 62(a) and then determine what percent-

age of that gross income is derived from farming operations (hereinafter, "Tax Code test"). *In re Wagner*, 808 F.2d 542, 549 (7th Cir.1986). Other courts have found the definition of "gross income" in the Tax Code too rigid for use in bankruptcy cases and have employed a more flexible approach. *See Cadle Co. v. King (In re King)*, 272 B.R. 281, 292–93 (Bankr. N.D.Okla.2002) (discussing the two approaches). The second test examines the circumstances around the debtor's income in order to achieve an equitable result. *Watford*, 898 F.2d at 1528–29. The Appellants argue that the bankruptcy court erred by solely relying on the Tax Code test and accepting Sharp's income tax designation of his gross income as total income from farming operations. According to the Appellants, the bankruptcy court should have employed the totality of the circumstances test. This test, they contend, is the better reasoned test and would have appropriately weighed the testimony of their expert witnesses and their supporting documentary evidence.

The Tenth Circuit has not spoken about which test should be employed. However, we need not decide that issue today. While the bankruptcy court first addressed the provisions of the Tax Code test, ultimately, the bankruptcy court made findings under both tests. The bankruptcy court concluded that under either the Tax Code test or the totality of the circumstances test, the weight of the evidence supported its finding that Sharp had a farming operation and was a farmer.

■■■ Next, the Appellants argue that the bankruptcy court erred when it found Sharp credible because Sharp's testimony was not supported by the evidence. The

---

4. Neither party here argues that an order buyer is a farmer, and the law is fairly clear that an order buyer is not a farmer. *Cf. In re Beery*, 680 F.2d 705, 715–16 (10th Cir.1982)

(finding that performing as a middleman for the purchase of grain was not farming activities).

issue of a debtor's credibility is a question of fact. Questions of fact are examined under the clearly erroneous standard. *See* Fed.R.Civ.P. 52(a). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

■ In finding Sharp credible, the bankruptcy court stated:

> The Court's decision is based heavily on its observation of the witnesses' demeanor at trial. Sharp was credible, and the documents he introduced into evidence support his version of how he conducted business. Witnesses for the Petitioning Creditors were likewise believable, but the weight of the evidence supports Sharp's position. He carried his burden of proof to demonstrate that he was a farmer.

Memorandum Decision at 11 *in* Appellants' Appendix, Vol. I, at 307. The Appellants argue that Sharp's testimony was controverted by the testimony of their expert witness. While the Appellants' expert witness did contradict Sharp's testimony, it is not for us to decide which witness was more credible. "[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Anderson v. City of Bessemer City*, 470 U.S. 564, 575–76, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

The Appellants argue that their expert's testimony was supported by extrinsic evidence while Sharp's was not. However, we fail to find any such evidence in the record. Appellants' expert witness did not rebut the evidence with anything more than various scenarios indicating that in her opinion Sharp probably could not have derived all of his income from farming operations. The expert witness's opinion goes to her credibility, which again was a matter for the trial judge. Moreover, the "supporting" extrinsic documentary evidence was premised on the opinions of the Appellants' expert and essentially introduced scenarios, not hard evidence. The trial court's conclusion that Sharp was credible was not clearly erroneous.

■ Next, the Appellants argue that there were evidentiary errors during the course of the trial resulting in "unfair surprise" to the Appellants. The admissibility of evidence is reviewed under an abuse of discretion standard. *United States v. Harmon*, 918 F.2d 115, 118 (10th Cir.1990). When a trial court excludes evidence upon which the offering party properly objects, "we will reverse only if the exclusion is an abuse of discretion that results in 'manifest injustice to the parties.'" *Thompson v. State Farm Fire & Cas. Co.*, 34 F.3d 932, 939 (10th Cir.1994) (citations omitted). To show an abuse of discretion, the Appellants must make a clear showing that they suffered prejudice and that the ruling was "inconsistent with substantial justice" or affected their "substantial rights." *See Coletti v. Cudd Pressure Control*, 165 F.3d 767, 773 (10th Cir.1999) (citations omitted); Fed. R. Bankr.P. 9005 (incorporating Fed. R.Civ.P. 61, which describes "harmless error").

■ The Appellants argue that the bankruptcy court abused its discretion when it disallowed Goll's deposition testimony. Federal Rule of Bankruptcy Procedure 7032 makes Federal Rule of Civil Procedure 32 applicable in adversary proceedings. Under Rule 32, the deposition

of a witness is admissible against a party who was present and represented at a deposition if the deposition would be admissible under the rules of evidence and if, among other reasons, the court finds that the "witness is unable to attend or testify because of age, illness, infirmity, or imprisonment...." Fed.R.Civ.P. 32(a)(3)(C). Here, at trial, the Appellants stated that their witness was unavailable and made a proffer as to the substance of the deposition testimony. The judge denied their motion without stating a basis for so doing. While the deposition may have been admissible under Rule 32, the Appellants have offered no evidence that the exclusion of the deposition prejudiced them or affected their substantial rights. The proffer made by the Appellants indicated that Goll had testified in the deposition that Sharp had done order buying for him. In substance, this testimony does not refute or further substantiate any admitted evidence at trial. Sharp admitted that he did order buying for Goll, and the amount of order buying that he did for Goll does not appear to be in dispute. Furthermore, there is nothing in the record indicating that any order buying that Sharp did for Goll would have reduced the eighty percent income requirement and thereby disprove Sharp's statement that he was a farmer as defined by the Bankruptcy Code. Even if the exclusion of the deposition was in error, the record indicates that, at most, it was harmless error.

■ Next, the Appellants argue that the bankruptcy court erred when it denied their motion for a continuance to permit them to locate and call an expert witness to rebut Sharp's testimony. This argument does not bear scrutiny. The pretrial order clearly indicated that Sharp would testify and the nature of his testimony. Moreover, the central issue of the trial was whether Sharp was a farmer. The Appellants had notice of the central issue. The bankruptcy court did not abuse its discretion in denying the continuance.

■ Finally, the Appellants contend that the bankruptcy court erred when it permitted Sharp to testify on matters upon which he had taken the Fifth Amendment during his deposition.[5] Basically, the Appellants are arguing that Sharp should be penalized for not fully complying with discovery. A bankruptcy court's discovery decisions are reviewed for abuse of discretion. *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1184 (10th Cir.), *cert. denied,* — U.S. —, 127 S.Ct. 584, 166 L.Ed.2d 429 (2006). Legal questions are reviewed de novo and factual determinations are reviewed for clear error. When the district court errs in deciding a legal issue, it abuses its discretion. *Id.*

■ An individual can invoke the Fifth Amendment in a bankruptcy proceeding. *Gannett v. Carp (In re Carp)*, 340 F.3d 15, 22 (1st Cir.2003). Generally, when an individual invokes the Fifth Amendment, the person claiming its protection will then receive a judicial ruling on the validity of the claim and will have " 'an opportunity to reconsider it before being [penalized] for refusal to answer.' " *Rogers v. Webster,* 776 F.2d 607, 612 (6th Cir.1985) (quoting *Garner v. United States,* 424 U.S. 648, 663, 96 S.Ct. 1178, 47 L.Ed.2d 370 (1976)) (alteration in original). "Not affording one who asserts the privilege an opportunity to answer, once his claim of privilege has been rejected, is to penalize him merely for asserting the privilege." *Rogers,* 776 F.2d at 612.

---

5. The record indicates that Sharp invoked the Fifth Amendment because there were pending criminal charges. However the criminal charges appear to have been concerning his operations in 2005, and not 2004.

Here, the Appellants argue that the bankruptcy court should have sanctioned Sharp for invoking his Fifth Amendment right by refusing to let him testify in the proceeding. However, the Appellants did not preserve this issue for appeal. Sharp is listed in the pre-trial order as a witness. The pre-trial order states that he will give "[t]estimony about his farming operation, income, source of income, and a foundation for the introduction of evidence." Final Pretrial Order at 10 *in* Appellants' Appendix, Vol. I, at 116. Although at trial, the Appellants objected to Sharp's testimony on the ground that he had refused to answer all of their questions in the deposition, they did not do so either in the discovery or pretrial process. The pre-trial order put the Appellants on notice of Sharp's intended testimony and counters the Appellants allegation that Sharp's testimony constituted unfair surprise. In this context, the failure to object before trial constitutes a failure to raise the issue at the proper time and bars the aggrieved party from raising the issue on appeal. *See Carp*, 340 F.3d at 23. Moreover, permitting such a sanction in the absence of a judicial ruling on the propriety of his invocation of the Fifth Amendment would be to penalize Sharp for invoking his constitutional right. That we cannot do.

### III. Conclusion

For the reasons set forth above, the order of the bankruptcy court is affirmed.