In re Douglas Lynn HILL and Sandra Lynn Hill, Debtor.

Zavala Torres Melquiades, Plaintiff–Appellant,

v.

Douglas Lynn Hill and Sandra Lynn Hill, Defendants–Appellees.

Nos. 08–001, 07–10924. Adversary No. 07–01106.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

July 9, 2008.

Submitted on the briefs: * Rex D. Brooks, Oklahoma City, Oklahoma, for Plaintiff–Appellant.

Before McFEELEY, Chief Judge, CLARK,[1] and NUGENT, Bankruptcy Judges.

---

* The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed.

R. Bankr.P. 8012. The case is therefore ordered submitted without oral argument.

1. Honorable Glen E. Clark, United States Bankruptcy Judge, United States Bankruptcy

## OPINION

GLEN E. CLARK, Bankruptcy Judge.

Appellant, Zavala Torres Melquiades ("Appellant"), appeals the bankruptcy court's order determining his claim against the debtors, Douglas and Sandra Hill ("Debtors"), to be dischargeable. We affirm.[2]

## I. BACKGROUND

Appellant is a former employee of Atlas Pallet & Mfg. Co, Inc. ("Atlas"), which was wholly owned by Debtors. In January 1993, Appellant suffered a compound fracture of his right ankle while on the job at Atlas. In November 1993, he was awarded workers' compensation benefits in the amount of approximately $17,000 by the Oklahoma Workers' Compensation Court. However, Atlas did not carry workers' compensation insurance, although such coverage is legally required in Oklahoma.[3]

In 1997, based on the workers' compensation award, Appellant obtained a state court judgment against Atlas. In the course of state court proceedings to determine Atlas's assets, Appellant learned that Debtors had sold all of the corporate assets to a third-party in 1996, and that the corporate entity had been dissolved shortly thereafter, for failure to pay franchise taxes. Appellant then filed suit in state court against the Debtors, individually, alleging that they had engaged in a fraudulent bulk sale, and that they should be held account-

able as officers of the corporation. On June 4, 1999, judgment was entered in state court in favor of Appellant and against the Debtors for the entire workers' compensation award, plus approximately $15,000 in interest and costs.

Appellant's counsel immediately registered the judgment with the county clerk and, in May 2004, filed a notice of renewal of the judgment as well. The Debtors filed for Chapter 7 relief in 2007. Appellant filed an adversary complaint in the bankruptcy case on June 22, 2007, asserting that his judgment is non-dischargeable based on allegations that Debtors' acts constitute fraud and embezzlement by a fiduciary, pursuant to 11 U.S.C. § 523(a)(4), and willful and malicious injury, pursuant to 11 U.S.C. § 523(a)(6).[4] Following an evidentiary hearing, the bankruptcy court ruled in favor of the Debtors.

## II. APPELLATE JURISDICTION

This Court has jurisdiction to hear timely-filed appeals from final judgments and orders of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[5] The bankruptcy court's December 19, 2007 order, finding Appellant's claim to be dischargeable, fully and finally resolved the parties' dispute. Appellant timely filed his notice of appeal on January 2, 2008,[6] and no party has elected to have

---

Court for the District of Utah, sitting by designation.

**2.** Appellant's Motion for Leave to File an Amendment to Correct Plaintiff-Appellant's Opening Brief is hereby granted. Pursuant to this Court's previous ruling, we have considered the motion itself to be the amendment.

**3.** *See* Okla. Stat. tit. 85, § 61, *et seq.*

**4.** Unless otherwise noted, all further statutory references in this decision are to provisions of

the Bankruptcy Code, Title 11 United States Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

**5.** 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr.P. 8002.

**6.** The tenth day after entry of judgment fell on December 29, a Saturday. The Clerk's Office was closed on the next two business days, December 31 and January 1. Therefore, the

the appeal heard by the United States District Court. Therefore, this Court has appellate jurisdiction over this appeal.

## III. ISSUES AND STANDARD OF REVIEW

A. Did the bankruptcy court properly determine that Appellant had not satisfied the burden of proving his claim to be non-dischargeable under § 523(a)(4), based on "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny?"

B. Did the bankruptcy court properly determine that Appellant had not satisfied the burden of proving his claim to be non-dischargeable under § 523(a)(6), based on "willful and malicious injury by the debtor[s]?"

■ These issues consist of mixed questions of fact and law. We review the factual determinations underlying the legal conclusions for clear error, and we review the legal conclusions themselves *de novo.*[7]

C. Did the bankruptcy court properly deny Appellant's motions to compel production of documents and to amend his complaint in order to add a claim under § 727(a)(3) for non-dischargeability based on unjustified concealment, destruction, or

failure to keep records from which the Atlas sale proceeds could be determined?

■ The denial of a motion to amend is reviewed for abuse of discretion.[8] Similarly, "a bankruptcy court's discovery decisions are reviewed for abuse of discretion."[9]

## IV. DISCUSSION

Appellant's claims are principally founded on two theories: either the Debtors intended to injure him by failing to obtain workers' compensation coverage, or their conduct in connection with the sale of Atlas constitutes either a breach of fiduciary duty or an embezzlement.

### A. § 523(a)(6): willful and malicious injury.

■ Appellant's § 523(a)(6) malicious injury claim relies largely on the reasoning set forth in *In re Peel.*[10] The *Peel* case involved facts similar to the present ones: the plaintiff was employed by the debtor and was seriously injured on the job, the debtor failed to carry workers' compensation coverage as required by law, and the plaintiff obtained a large judgment against the debtor for his injury.[11] In considering the *Peel* plaintiff's claim, the court determined that "a debtor may act 'maliciously' [under § 523(a)(6)] if it was foreseeable

notice of appeal was timely filed on January 2.

**7.** *Panalis v. Moore (In re Moore),* 357 F.3d 1125, 1127 (10th Cir.2004).

**8.** *Hayes v. Whitman,* 264 F.3d 1017, 1026 (10th Cir.2001).

**9.** *In re Sharp,* 361 B.R. 559, 566 (10th Cir. BAP 2007) (citation omitted).

**10.** *Hilliard v. Peel (In re Peel),* 166 B.R. 735 (Bankr.W.D.Okla.1994). We note that the *Peel* decision predates the U.S. Supreme Court's decision in *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), which held that § 523(a)(6) requires proof of "a deliberate or intentional *injury,*

not merely a deliberate or intentional *act* that leads to injury." *Id.* at 61, 118 S.Ct. 974 (emphasis in original).

**11.** The debtor's failure to obtain coverage in *Peel* was particularly egregious. That debtor had deducted money from plaintiff's paychecks for several years, ostensibly for the purchase of workers compensation coverage, but had not used the funds for that purpose. Additionally, even if the debtor had used the withheld funds to obtain coverage, such deductions were specifically prohibited by Oklahoma law. Okla. Stat. tit. 85, § 46 (deducting from employees' pay for workers' compensation coverage constitutes a misdemeanor).

that an employee would be injured and that failure to obtain workman's compensation would injure the employee's statutory right to insurance benefits."[12]  In *Peel*, the court considered both the accident and the injury to have been "abundantly foreseeable," especially given that debtor's employees "were engaged in a business that is noticeably and inherently dangerous."[13]

Subsequent to *Peel*, the Supreme Court issued *Geiger*, in which it held that a patient's malpractice judgment against her surgeon did not satisfy § 523(a)(6) because the terms "willful and malicious" in that section modify "injury" and, therefore, the defendant must intend the consequences of his actions, not just the actions themselves.[14]  The *Peel* decision at least arguably survives *Geiger*, since it defined "injury" as the plaintiff's loss of his legal right to worker's compensation benefits, rather than his physical injury.  Thus, *Peel* reasoned that employers could reasonably foresee some physical injury to their employees, but still not intend for such injuries to occur.[15]  However, given that physical injury is reasonably foreseeable (especially in a hazardous employment), an employer's intentional failure to provide legally required insurance for such injuries would almost certainly result in an employee's financial injury in the event of such a mishap.[16]  Courts that reject this reasoning often do so on the basis that failure to provide insurance is not malicious because the intervening physical injury is not substantially certain to follow.[17]

In any event, the *Peel* holding appears to have been rejected by the Tenth Circuit in *In re Moore*, in which the court held that a state court fraud judgment failed to satisfy the § 523(a)(6) exception to discharge.[18]  In *Moore*, the plaintiff's judgment arose from the debtor's false representation that he had insurance that would cover plaintiff in the event of an injury, and plaintiff was subsequently severely injured in a workplace accident.  In rejecting plaintiff's contention that his claim was non-dischargeable, the court stated:

In the context of this case, the Code makes inescapable the principle that unless a debt is the result of a willful and

---

**12.** *Id.* at 739 (*quoting Strauss v. Zielinski*, 99 B.R. 396 (N.D.Ill.1989)).

**13.** *Id.* at 738.  In *Peel*, the debtor's business consisted of collecting manure from cattle yards and spreading it on neighboring farms. The plaintiff lost an eye when a piece of metal flew up from one of debtor's machines.  In the present case, Debtors' company was engaged in repairing and building pallets.  In the course of this occupation, Appellant severely broke his ankle.  While neither occupation initially appears to be inherently hazardous, it is probably fair to characterize pallet manufacturing as at least as hazardous as picking up and spreading manure.

**14.** *Kawaauhau v. Geiger*, 523 U.S. at 61–62, 118 S.Ct. 974.

**15.** Indeed, it ordinarily would be nearly impossible to prove that an employer intended that his employee sustain a physical injury on the job, since such occurrences would typically be financially detrimental to the employer as well.

**16.** The Tenth Circuit has held that a § 523(a)(6) inquiry should focus on "the debtor's actual knowledge or the *reasonable foreseeability* that his conduct will result in injury…." *C.I.T. Financial Serv. v. Posta (In re Posta)*, 866 F.2d 364, 367 (10th Cir.1989) (emphasis added).  However, this statement does not necessarily eliminate the argument that the physical injury is itself an intervening event.  In any event, since *Geiger*, continued reliance on the *Posta* case must be carefully considered.  *See, e.g., In re Longley*, 235 B.R. 651, 656 (10th Cir. BAP 1999).

**17.** *See, e., Pratt v. Pourdas (In re Pourdas)*, 206 B.R. 516, 519–20 (Bankr.S.D. Ill.1997)

**18.** *Panalis v. Moore (In re Moore)*, 357 F.3d 1125 (10th Cir.2004).

malicious act intended to do injury to a person, the debt is discharged. Having failed to prove, either in the Colorado court or in the Bankruptcy court, that Mr. Moore willfully and maliciously intended to cause his physical injury, Mr. Panalis was not entitled to an exception from discharge.[19]

Unfortunately, the *Moore* court did not discuss *Peel* directly, nor that court's reasoning that the injury consisted of the financial, rather than the physical, harm. Nonetheless, the conclusion appears inescapable that, at least in the Tenth Circuit, a judgment for damages relating to physical injury does not satisfy § 523(a)(6) where the debtor's conduct consists of a failure to provide insurance rather than the cause of the physical injury itself. Therefore, the bankruptcy court's determination that the Appellant's claim in the present case did not fall within the parameters of § 523(a)(6), and was therefore not excepted from discharge on that basis, was correct.

B. § 523(a)(4): fraud while acting in a fiduciary capacity; embezzlement.

■ Appellant's § 523(a)(4) claims stem from the Debtors' sale of Atlas and failure to apply the sale proceeds to satisfy Appellant's judgment. With respect to a claimed breach of fiduciary duty, this Court has previously held that such a claim requires proof: 1) of a fiduciary relationship; 2) that the debtor has been entrusted with money which forms the basis for "an express or technical trust"; and 3) that the fiduciary relationship existed before the creation of the debt.[20] Appellant does not contend that there was an express trust in the present case, and there are three requirements for a trust imposed by statute: 1) the statute defines the trust *res*; 2) the statute defines the fiduciary duty; and 3) "the statute must impose a trust on funds prior to the act creating the debt." [21]

■ Appellant asserts that a trust was created by the Oklahoma General Corporation Act ("Corporation Act"), which provides that directors of a dissolved corporation "shall not be personally liable to the claimants of the dissolved corporation," if they comply with the procedures for corporate dissolution under the act.[22] In 1957, the Oklahoma Supreme Court found that, under the Corporation Act, "corporate assets comprise a 'trust' for the payment of its liabilities before any distribution may be made to the shareholders." [23] However, as noted by the bankruptcy court, the Corporation Act does not sufficiently and explicitly create a trust or define a trust *res* that would satisfy the Tenth Circuit's statutory trust requirements.[24]

19. 357 F.3d at 1129–30.

20. *Employers Workers' Comp. Assoc. v. Kelley (In re Kelley)*, 215 B.R. 468, 472 (10th Cir. BAP 1997) relying on *Allen v. Romero (In re Romero)*, 535 F.2d 618 (10th Cir.1976) and *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367 (10th Cir.1996).

21. *See Medved v. Novak (In re Novak)*, 97 B.R. 47, 59 (Bankr.D.Kan.1987) (*citing In re Lipke*, 54 B.R. 704, 706 (Bankr.W.D.Wis.1985); *Merrill v. Merrill (In re Merrill)*, 252 B.R. 497, 505 (10th Cir. BAP 2000)) ("When a state law has created a fiduciary relationship, it must have imposed a trust on a property and delineated the fiduciary duties.").

22. Okla. Stat. tit. 18, § 1100.2(C).

23. *Wewoka Petroleum Corp. v. Gilmore*, 319 P.2d 285, 289 (Okla.1957).

24. In this regard, the bankruptcy court distinguished the Corporation Act from the materialman's lien act, which specifically provides that amounts payable under building or remodeling contracts "shall, upon receipt by any contractor or subcontractor, be held as trust funds for the payment of all lienable claims," thereby both creating a trust and defining a trust *res*. Okla. Stat. tit. 42, § 152(1).

■ Appellant's embezzlement claim is that, as a creditor of Atlas, he was entitled to some of the proceeds of the sale of Atlas assets, which were embezzled by the Debtors. Oklahoma defines "embezzlement" as "the fraudulent appropriation of property of any person or legal entity, legally obtained, to any use or purpose not intended or authorized by its owner." [25] Although Appellant arguably had an interest in the sale proceeds, he was not the "owner" of those proceeds, and any embezzlement claim that may have arisen from the asset sale belonged solely to Atlas. Debtors' potential personal liability for the corporate debts (based on their failure to comply with the requirements of corporate dissolution) does not additionally create a corporate creditor's cause of action for embezzlement.

The bankruptcy court correctly concluded that Appellant's claim did not fall within the parameters of § 523(a)(4), and was not excepted from discharge on that basis.

### C. Denial of Motion for Production/Amendment.

■ On November 19, 2007, approximately two weeks after expiration of the discovery deadline and slightly less than 30 days prior to trial, Appellant filed a motion to compel production of documents and a motion to amend his complaint. He sought both to compel production of the sale documents and to add a claim under § 727(a)(3). That section creates an exception to discharge when a Chapter 7 debtor conceals, destroys, falsifies, or fails to keep records "from which the debtor's financial condition or business transactions might be ascertained," without justification. [26] Appellant claimed that Debtors were only able to misappropriate the Atlas sale proceeds because they either destroyed documents or failed to maintain proper records. The bankruptcy court denied both motions as "untimely filed" and because amendment of the adversary complaint "would severely prejudice the defendants."

Appellant focuses on whether he was entitled to assert a claim under the statute, rather than on the appropriateness of the motion denial. Moreover, Appellant's own statement of the case in the pre-trial order indicates that, in fact, he already had the information that he sought:

> The Defendants were the only officers (Douglas, president and Sandra, vice-president/Secretary/Treasurer) and sole stockholder of Atlas 1, on August 22, 1996 and September 20, 1996, when Atlas 1 sold all of its assets to Atlas Pallet Co., Inc. hereinafter ("Atlas 2") an unrelated company. The sale price was $45,000. $5,000 was paid down and $40,000 was paid at closing on September 20, 1996. Instead of paying Atlas 1 pursuant to the contract, Atlas 2 paid $30,094.28 in cashier's checks made out to Douglas Hill. Douglas Hill and Sandra Hill have failed to account for those funds to Atlas 1. At the time of the closing of the sale, Atlas 1 owed Plaintiff $25,414.64 ($16,999.50 principal, $8,415.14 interest). [27]

The bankruptcy court's denial of the motion must be considered in light of the following circumstances: 1) Appellant sought to add a legal claim to his complaint based on the same facts he had

---

**25.** Okla. Stat. tit. 21, § 1451(A).

**26.** Section 727(a)(3) provides a general exception to discharge, whereas § 523(a) excepts certain debts from discharge. As such, the pending adversary proceeding was arguably not an appropriate vehicle for the claim anyway.

**27.** Pre–Trial Order at 2–3 *in* Appellant's Appendix, Vol. 1, at 99–100.

alleged in the other two counts; 2) Appellant did not justify his failure to seek amendment sooner; and 3) Appellant already had the information he sought to compel Debtors to produce. Under these circumstances, we cannot conclude that the bankruptcy court's decision was an abuse of discretion.

## V. CONCLUSION

The bankruptcy court's order determining Appellant's claim to be dischargeable is hereby AFFIRMED.