**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 4, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

In Re:

WILLIAM DANIEL THOMAS
BERRIEN, also known as William
Thomas Berrien, also known as W.D.
Thomas Berrien, also known as
William T. Berrien, also known as
Tom Berrien, Officer, Director,
Shareholder of Centaur Mountain
Farms, Inc.,

       Debtor,

   v.

LIZELLE J. VAN VUUREN, CEDRIC
G. TYLER, and VERONICA VAN
VUUREN TYLER,

       Plaintiffs-Appellees,

WILLIAM DANIEL THOMAS
BERRIEN,

       Defendant-Appellant.

No. 07-1294
BAP
(BAP No. CO-06-107)

---

**ORDER AND JUDGMENT**[*]

---

    [*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Before **KELLY**, **TYMKOVICH**, Circuit Judges, and **FRIZZELL**, District Judge.[**]

_____

Debtor William Daniel Thomas Berrien and his wife, Joanne, fabricated a hit-and-run accident, hoping for financial gain. The fabrication targeted eighteen-year-old high school student Lizelle J. Van Vuuren. Based on the false accusation, she was criminally prosecuted on misdemeanor and felony charges for leaving the scene of an accident. Although Lizelle successfully defeated the criminal charges, that was not before her parents, Cedric G. Tyler and Veronica Van Vuuren Tyler, had spent substantial sums defending Lizelle in the criminal cases.

Following the prosecutions, the Tylers and Lizelle filed a civil complaint in Colorado state court against the Berriens,[1] alleging a number of torts, including abuse of process, civil conspiracy to defraud, extreme and outrageous conduct, and intentional infliction of emotional distress. Just prior to trial, Mr. Berrien filed for Chapter 7 bankruptcy. The Tylers filed an adversary proceeding in bankruptcy court, alleging some of Mr. Berrien's debt was nondischargeable under 11 U.S.C. § 523(a)(6) as a result of his malicious conduct. After trial, the

_____

[**] Hon. Gregory K. Frizzell, United States District Court, Northern District of Oklahoma, sitting by designation.

[1] The Berriens apparently divorced in February 2002. For convenience we refer to them collectively as the "Berriens." The Tylers later settled their claims against Mrs. Berrien.

bankruptcy court agreed, concluding Mr. Berrien owed the Tylers nondischargeable debt in the amount of the criminal defense costs because his conduct caused "willful and malicious injury." § 523(a)(6). The bankruptcy appellate panel (BAP) affirmed.

The question presented in this appeal is whether the Tylers could recover under § 523(a)(6) damages for Mr. Berrien's misconduct, including the costs incurred in defending Lizelle. We conclude the parents had numerous legally cognizable interests that support a finding of nondischargeability under § 523(a)(6) in these bankruptcy proceedings.

We therefore AFFIRM the BAP's order and judgment.

## I. Background

*Fabricated Hit-and-Run*

After a three-day trial, the bankruptcy court made the following findings of fact, which are not disputed in this appeal.

Hoping to gain financially, the Berriens fabricated a hit-and-run accident. Their false accusation targeted Lizelle, a citizen of South Africa, who at the time of the accusations was an eighteen-year-old high school student living with her parents in Evergreen, Colorado.

On the afternoon of April 3, 2000, Lizelle was driving her parents' car. For reasons not relevant here, the car was uninsured. Lizelle, with a friend in the car, drove to a Safeway store to pick up school supplies. The Berriens falsely accused

Lizelle of hitting Mrs. Berrien with a car while she was walking in Safeway's parking lot.

According to the fabricated story, Mr. Berrien stood in the parking lot when he saw Lizelle's car race up and down the rows of cars. Then he saw the car hit his wife on the left leg, causing her to twist and fall. Mr. Berrien allegedly ran to help his wife and, while running, wrote down the car's license plate number.

Although they knew about a nearby doctor's office, located only about 200 to 300 feet away, the Berriens did not immediately go there for medical help. Nor did they ask any of the people around them for help. And they did not seek help from the Safeway store. Despite the alleged hit-and-run's location—near the front of the store—nobody apparently volunteered assistance.

Indeed, except for an individual named Shawn DePauw, nobody witnessed the alleged accident. DePauw, who may have been acquainted with Mr. Berrien prior to April 3, 2000, testified he had witnessed some 400 accidents in his lifetime, but never once came to assistance or called for help. He claimed that, from about two rows away, he saw Lizelle's car hit Mrs. Berrien. According to him, Mrs. Berrien's feet flew up in the air before she fell. But having just witnessed what is alleged to be a fairly serious accident, DePauw did absolutely nothing to help. He did not call 911, report the accident to Safeway, or approach either Mr. Berrien or his then-wife to offer help. He apparently got into his car

and left.  The Berriens claim they happened to run into DePauw a week later in the same Safeway store.  And so DePauw became a witness.

Either later on the day of the alleged accident or the next day, the Berriens reported the fabricated story to the police.  Mrs. Berrien also visited a doctor.

*Criminal and Civil Cases in Colorado State Courts*

The false accusations resulted in two criminal prosecutions against Lizelle—one misdemeanor and one felony case.  Although the cases were dismissed on April 12, 2001 and February 12, 2002, respectively, Lizelle's parents had spent slightly over $96,000 in defending Lizelle against the charges.  As the bankruptcy court noted, had she been convicted, Lizelle faced potential deportation to South Africa.

In addition, the Tylers had to defend two civil lawsuits filed against them.  In one, Mrs. Berrien's insurance company sought subrogation for uninsured motorist payments the company made to her in connection with the fabricated accident.  After investigating the facts surrounding the fabricated accident, the insurance company dropped its claim against the Tylers.

The second civil case was Mrs. Berrien's April 2, 2002 lawsuit against Lizelle and her parents for damages from the fabricated hit-and-run.  By the parties' stipulation, the action was dismissed with prejudice on October 25, 2002.

After resolving Mrs. Berrien's lawsuit against them, Lizelle and her parents filed their own lawsuit against the Berriens in Colorado state court.  They alleged,

among other claims, abuse of process, civil conspiracy to defraud, extreme and outrageous conduct, and intentional infliction of emotional distress. As part of their damages, the Tylers claimed expenses incurred in defending the civil and criminal matters, including over $96,000 they had spent defending Lizelle's criminal charges. Before the trial scheduled for November 2004, however, Mr. Berrien filed for bankruptcy, thus staying the Tylers' civil case.

*Bankruptcy Proceedings*

The Tylers then filed adversary proceedings in the bankruptcy court to establish the nondischargeability of Mr. Berrien's debt for damages caused by the false hit-and-run accusation. Among other allegations, the complaint charged Mr. Berrien with making false statements "willfully and maliciously for the purpose of monetary gain," abusing "the criminal justice system for the ulterior purpose of obtaining money fraudulently from" the Tylers, and engaging "in extreme and outrageous conduct." Aplt. App. 16–22.

After a three-day trial, comparing the credibility and reliability of Lizelle, her parents, and other plaintiff witnesses with that of the Berriens and other witnesses for the defense, the bankruptcy court unequivocally concluded "the plaintiffs win by a reasonably wide and deep margin." *Id.* at 1033. The court then awarded the Tylers $96,049.41 for expenses in defending Lizelle's criminal charges and a nominal sum of $1 for lost business opportunity and emotional

distress.  All damages represented nondischargeable debt under 11 U.S.C.
§ 523(a)(6) ("willful and malicious injury").  The BAP affirmed.

## II.  Analysis

"On appeal from BAP decisions, we independently review the bankruptcy court's decision."  *Educ. Credit Mgmt. Corp. v. Mersmann (In re Mersmann)*, 505 F.3d 1033, 1041 (10th Cir. 2007).  When, as here, the only dispute is a matter of law, our review is de novo.  *Id.*

Unlike in his appeal to the BAP, Mr. Berrien does not now challenge the bankruptcy court's conclusion that his conduct caused "willful and malicious injury" within the meaning of § 523(a)(6).  Rather, he repeats the argument that Lizelle's parents could not recover the cost of defending Lizelle's criminal charges.  Mr. Berrien contends the parents were merely volunteers, with no legal obligation whatsoever to pay for their eighteen-year-old daughter's legal expenses.  He thus reasons the parents have no legally cognizable claim for which the bankruptcy court could have awarded them over $96,000 in damages.  We disagree.

### A.

In the first place, we cannot accept Mr. Berrien's characterization of Lizelle's parents as mere volunteers.  The Tylers were defending their own legal interest in paying for Lizelle's criminal defense.  Had she been convicted, her criminal responsibility could have collaterally estopped the parents from arguing

the opposite in defending a potential civil lawsuit against them, a lawsuit Mrs. Berrien in fact commenced in short order. *See, e.g.*, *A-1 Auto Repair & Detail, Inc. v. Bilunas-Hardy*, 93 P.3d 598, 602 (Colo. Ct. App. 2004) (holding "that issue preclusion will bar litigation in a civil trial of an issue that has been previously litigated in a criminal trial, provided the requisites for the application of issue preclusion are satisfied"). Had Lizelle been convicted, the conviction would have helped Mrs. Berrien prove her civil case against the Tylers.

Moreover, the car Lizelle was driving was uninsured, and the Tylers faced significant exposure for their own liability if Lizelle were convicted of a hit-and-run. *See, e.g.*, Colo. Rev. Stat. § 10-4-619(1) ("Every owner of a motor vehicle who . . . knowingly permits the operation of the motor vehicle on the public highways of this state shall have in full force and effect a complying [insurance] policy . . . covering the said motor vehicle . . . ."); *Am. Family Mut. Ins. Co. v. DeWitt*, No. 05CA2687, 2008 WL 451742, at *3 (Colo. Ct. App. Feb. 21, 2008) ("The family car doctrine imputes liability to the head of a household when he or she has control over the vehicle and the vehicle is used by a person who is a member of the household").

We thus cannot agree Lizelle's parents were legally disinterested volunteers when they paid for her criminal defense.

**B.**

In any event, the Tylers had independent claims against Mr. Berrien that they sought to vindicate in bankruptcy court.

Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." The debtor's conduct, in other words, must have caused "willful and malicious injury." As explained by the Supreme Court, this language means "that the actor intend the *consequences* of an act, not simply the act itself." *Kawaauhau v. Geiger*, 523 U.S. 57, 61–62 (1998) (quotation marks omitted). For debt to become nondischargeable under § 523(a)(6), "the debtor must desire to cause the consequences of his act or believe that the consequences are substantially certain to result from it." *Panalis v. Moore (In re Moore)*, 357 F.3d 1125, 1129 (10th Cir. 2004) (quotation and alteration marks omitted); *see also* 4 *Collier on Bankruptcy* ¶ 523.12[2] (15th ed. rev. 2008) (noting most courts require an injury inflicted "either with the intent to cause the harm complained of, or in circumstances in which the harm was certain or almost certain to result from the debtor's act").

The "willful and malicious injury" language, "[b]y its terms, . . . may apply to a broad range of [tortious] conduct causing harm to people or property." *Id.* ¶ 523.12[1]. Thus, for example, not only does this exception apply to liabilities "arising from assault or assault and battery," but claims "based on . . . intentional

infliction of emotional distress . . . have [also] typically been held nondischargeable." *Id.* ¶ 523.12[4] (collecting authorities).

The Tylers easily satisfy the "willful and malicious injury" requirement. Prior to the bankruptcy filing, Lizelle and her parents filed a civil lawsuit against the Berriens seeking damages for, among others, abuse of process, civil conspiracy, extreme and outrageous conduct, and intentional infliction of emotional distress. When Mr. Berrien stayed the case by petitioning for bankruptcy, the Tylers intervened in his bankruptcy proceedings. In their discharge complaint, the Tylers again broadly alleged Mr. Berrien's outrageous and malicious conduct, though this time tying the allegations, as they should have, to the "willful and malicious injury" requirement of § 523(a)(6).

Ruling in favor of the Tylers, the bankruptcy court concluded Mr. Berrien's outrageous conduct caused injury not only to Lizelle's but also to her parents' legal interest to be free from intentionally inflicted emotional distress and from the abusive civil process directed against them. These tort claims all arose from the pattern of abusive conduct employed by the Berriens against Lizelle and her parents collectively, ranging from the false criminal charges, to the filing of civil proceedings, to false claims against the Berriens' insurance company, which might have bolstered the credibility of the accusations.

Under Colorado law, the Tylers were entitled to compensatory and punitive damages for Mr. Berrien's numerous torts. These damages include, among other

things, emotional distress, lost business opportunity, and costs of defending frivolous civil and criminal proceedings. *See, e.g.*, *Technical Computer Servs, Inc. v. Buckley*, 844 P.2d 1249, 1256 (Colo. Ct. App. 1992) (explaining "that, in an action for malicious prosecution or abuse of process, a plaintiff may recover attorney fees incurred in defending against the earlier wrongful litigation"). The criminal proceedings were but a part of the larger scheme to abuse the legal process and inflict emotional injuries on the Tylers and Lizelle. Thus, the amounts expended by the Tylers in combating the fraudulent scheme necessarily include the costs of defending Lizelle.

The BAP correctly concluded, "Debtor's statements to Safeway, the police, and investigators were clearly intended to support a claim for damages, in which Debtor believed he would share." Aplt. Br. Att. at 8. Seeking "to fraudulently obtain money from whatever source he could find," Mr. Berrien "caused the Tylers to incur the expense of defending Lizelle against his false allegations." *Id.* at 8–9.[2]

---

[2] Mr. Berrien also challenges the award of criminal defense costs to Lizelle. He argues Lizelle, who did not herself pay the cost of criminal defense, should not be able to recover for these expenses. Because we conclude the bankruptcy court did not err in awarding damages jointly to Lizelle's parents, any error would be harmless. *See* Fed. R. Civ. P. 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."); Fed. R. Bankr. P. 9005 (incorporating Rule 61 in bankruptcy proceedings).

We therefore agree with the bankruptcy court's conclusion awarding the parents and Lizelle damages for emotional distress and compensatory expenses in the amount of approximately $96,000.

### III. Conclusion

For the foregoing reasons, we AFFIRM the BAP's order and judgment.[3]

Entered for the Court

Timothy M. Tymkovich
Circuit Judge

---

[3] We DENY the Tylers' motion to dismiss the appeal and motion for attorney's fees. Both rely on a written agreement between the Tylers and Mrs. Berrien, stipulating that only Mrs. Berrien would consider the BAP's decision to be final and non-appealable. As best we can tell from the record, Mr. Berrien was not a party to the agreement, and we thus cannot enforce it against him.