FILED
U.S. Bankruptcy Appellate Panel
of the Tenth Circuit

June 7, 2019

Blaine F. Bates
Clerk

NOT FOR PUBLICATION[1]

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE TENTH CIRCUIT

_____

IN RE WAYNE E. JENSEN and
VALERIE A. JENSEN,

      Debtors.

_____

EDWARD and ANNA PINO,

      Appellants,

v.

WAYNE E. JENSEN,

      Appellee.

BAP No. CO-18-089


Bankr. No. 16-21724
Adv. No. 17-01078
Chapter 7


OPINION

_____

Appeal from the United States Bankruptcy Court
for the District of Colorado
_____

Submitted on the briefs.[2]

_____

[1]     This unpublished opinion may be cited for its persuasive value, but is not precedential, except under the doctrines of law of the case, claim preclusion, and issue preclusion. 10th Cir. BAP L.R. 8026-6.

[2]     After examining the briefs and appellate record, the Court has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R. Bankr. P. 8019(b).

_____

Before **NUGENT**, Chief Judge, **CORNISH** and **HALL**, Bankruptcy Judges.
_____

**HALL**, Bankruptcy Judge.

Unfortunately, this case presents the all too common circumstance of a "home remodel gone wrong" that resulted in the contractor filing for bankruptcy protection and the homeowners seeking to hold the contractor responsible for broken promises and unsatisfactory results. The outcome is not surprising given the lack of customary business formalities ordinarily employed in projects of this magnitude. After a trial, the bankruptcy court concluded the homeowners did not meet their burden of proving any debts were nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4), or (a)(6)[3] and entered judgment in favor of the contractor. The homeowners now appeal, arguing the bankruptcy court failed to consider relevant evidence that contradicted its findings as to the elements of fraudulent misrepresentation, actual fraud, breach of fiduciary duty, and willful and malicious injury. Upon review of the briefs, the voluminous record, and the applicable law, we find no error in the bankruptcy court's analysis or ruling, and therefore, AFFIRM.

## I.    FACTUAL AND PROCEDURAL HISTORY[4]

---

[3]    Unless otherwise indicated, hereafter all references to "Sections" and "§" are to the Bankruptcy Code, Title 11 of the United States Code.

[4]    This factual background is drawn from the bankruptcy court's Findings of Fact and Conclusions of Law ("Opinion"), *in* Appellants' App. at 56, unless otherwise noted.

Appellants Edward and Anna Pino (the "Pinos") lived in a downtown Denver loft, but due to a growing family, purchased a future home at 75 Southmoor Drive, Denver, Colorado (the "Property") in 2012.[5] While still living in the downtown loft, the Pinos solicited construction bids to completely remodel and renovate the Property, including the addition of a second story to the home pursuant to plans drawn up by their architect (the "Project"). The Pinos received bids from several potential contractors, including one from New Century Builders LP ("NCB"), a limited partnership owned by debtor/defendant Wayne E. Jensen ("Jensen"), in the amount of $635,000.[6] The Pinos also received a bid from Red Corp. for between $800,000 and $900,000.

The Pinos accepted NCB's lower bid and, in March 2014, a contract (the "Contract") was prepared setting the contract price at $600,000[7] and requiring the Project to be completed within nine months. However, an executed copy of the Contract was not introduced into evidence by the parties. Mr. Pino testified that, at some point, the Contract price was changed to "between 600 and 650,000."[8] Further, Jensen testified the $600,000 was "a target price to shoot for,"[9] but that the Contract price was "635,000 plus the cabinets and installation," and extra for anything asked for that was outside the cost of

---

[5]     Transcript Day 1 at 19, *in* Appellants' App. at 104.

[6]     Exhibit 1-1 (Proposal), *in* Appellants' App. at 552.

[7]     Exhibit 1-3 (Contractor Agreement), *in* Appellants' App. at 554.

[8]     Transcript Day 1 at 27, *in* Appellants' App. at 112.

[9]     Transcript Day 1 at 197, *in* Appellants' App. at 282.

the Project as designed.[10] The Contract provided for payment through monthly construction draws following submission of a draw schedule,[11] but the parties instead agreed to payment on a "schedule of completion."[12] A review of the invoices suggests it was combination of the two methods.[13] There was no construction loan, escrow arrangement, or trust account. The Pinos paid NCB directly by cash or check when provided with invoices by NCB upon completion of particular stages of the Project or for a construction draw.

The Contract gave NCB access to the Property beginning March 26, 2014, and required the Project to be completed within nine months. However, the Contract also provided that work could not be commenced until all necessary approval, consent, and authority required under any law had been obtained, any applicable mortgage bond had been registered, and the Property was receiving required utilities. Due to numerous factors, including (i) disputes between the Pinos and their architect Andrew Abraham ("Abraham") that delayed obtaining construction permits and (ii) lack of required electricity at the Property, work on the Project did not begin until several months after the

---

[10]      Transcript  Day 2 at 161, *in* Appellants' App. at 481.

[11]      Exhibit 1-3 (Contractor Agreement), *in* Appellants' App. at 554.

[12]      Exhibit 2-1 (Monthly Expenditure History), *in* Appellants' App. at 562; Transcript Day 1  at 199, *in* Appellants' App. at 284.

[13]      *See* Exhibits 7-9, *in* Appellants' App. at 1049-1117.  Some contain the words "Construction Draw, some contain the words "Materials Reimbursement," and some contain both.

4

date anticipated by the Contract.

The construction delays continued for several reasons. First, there were subcontractor and labor shortages in the Denver area. Second, after firing Abraham,[14] the Pinos made many substantial changes, additions, and deletions to the Project's design and materials, but no formal change orders were ever drawn up[15] even though anticipated by the Contract.[16] During the two and one-half year relationship, the parties were in nearly constant communication, and the Pinos inspected the Project and met with Jensen frequently, as is substantiated by the large number of emails admitted into evidence at trial and the content thereof, as well as the parties' testimony.[17]

---

[14] According to Jensen, the Pinos had paid Abraham $80,000 for his services, but he would not give them their plans. Transcript Day 2 at 171, 182, *in* Appellants' App. at 491,502. Abraham would not verify that he received $80,000 from the Pinos, but testified that it was an "hourly contract and I recall that it was much higher than the estimate because we went through a number of design reviews." Transcript Day 2 at 52, *in* Appellants' App. at 372. Further, Jensen testified that when he got involved "[Abraham] had been suspended on the [P]roject . . . when I got on, [Abraham] was never part of the [P]roject. He was never going to be. . . . I was asked point blank by the Pinos, can I build this residence without the architect being involved." Transcript Day 2 at 173-74, *in* Appellants' App. at 493-94. Additionally, Dr. Pino testified that they "stopped utilizing [Abraham's] services" in early 2014. Transcript Day 1 at 92, *in* Appellants' App. at 177.

[15] Transcript Day 1 at 24, 32-33, *in* Appellants' App. at 109, 117-18.

[16] Paragraph 2.0 of the Contract provides "Any Changes to the project materials and or labor requested by the Owner that result in a change in the contract sum will be assigned a separate change order and will be paid by the Owner separate to and in addition to the Contract Sum." Exhibit 1-3 (Contractor Agreement), *in* Appellants' App. at 554.

[17] *See* Plaintiff's Admitted Exhibits 11-13, *in* Appellants' App. at 1126-1404; *see also* Transcript Day 1 at 33, *in* Appellants' App. at 118 (Dr. Pino's testimony); Transcript Day 1 at 137, *in* Appellants' App. at 222 (Mrs. Pino's testimony).

Though NCB performed a considerable amount of work,[18] the Project was still not completed more than two years after work began. In late July 2016, the Pinos, anxious to move in before the beginning of the coming school year, offered NCB a $15,000 bonus if it completed the Project by September 2, 2016, under the revised contract price of $650,000. Jensen rejected the offered bonus as he did not feel comfortable taking it, even though he was losing money on the Project. Nevertheless, Jensen told the Pinos that he would finish the Project for $650,000 by September 2, 2016, stating "I made an agreement with you and I will honor it."[19] Notwithstanding Jensen's representations, and the fact that the Pinos had paid NCB $630,182.22,[20] the Project remained incomplete throughout September and October 2016.

On October 31, 2016, the Pinos fired NCB. At the time NCB was fired, all suppliers and subcontractors had been paid, and there were no liens on the Property.[21] The Pinos then hired Red Corp., who originally bid on the Project at a much higher price, to finish the remodeling job on the Property. Red Corp. estimated the Project would take two to three months to complete. The Pinos paid Red Corp. $485,163.44 to complete the

---

[18]    Completed work included addition of the second story, plumbing, electrical, drywall installation, window and garage door installation, cabinet and tile installation, and work done in each bedroom, bathroom, and the kitchen.

[19]    Transcript Day 1 at 123, *in* Appellants' App. at 208.

[20]    The Pinos did not pay NCB's last two invoices totaling $14,845.

[21]    Even though the Pinos did not pay its last two invoices, NCB did not file a lien on the Property.

Project, but ultimately the Project took more than seven months to complete, and the Pinos were not able to move into the Property until June 2017.

Jensen and his wife, Valerie Jensen, filed for Chapter 7 bankruptcy protection on December 2, 2016. The Pinos filed their complaint initiating this adversary proceeding on March 6, 2017, alleging Jensen failed to complete the renovation and addition to the Property on time and under budget or provide information when requested. The Pinos sought to hold Jensen's alleged debts to them nondischargeable under § 523(a)(2)(A), (a)(4) and (a)(6), all of which require a fraudulent or deceptive intent or intent to cause injury. When Jensen answered the Pinos' complaint, he counterclaimed for bad faith breach of contract and unjust enrichment.

The bankruptcy court held a two-day trial on April 16 and 17, 2018, and heard the testimony of both Edward and Anna Pino, Jensen, Abraham, and Larry Behrendt of Red Corp. The parties submitted written closing arguments thereafter. The bankruptcy court entered its Findings of Facts and Conclusions of Law and Judgment on September 21, 2018, ruling in Jensen's favor on all claims against him,[22] and the Pinos timely appealed to this Court on October 5, 2018.

## II.    JURISDICTION AND STANDARD OF REVIEW

"With the consent of the parties, this Court has jurisdiction to hear timely-filed

---

[22]    The bankruptcy court ruled against Jensen on his counterclaim for bad faith breach of contract and unjust enrichment, concluding he had abandoned it or, in the alternative, he had no standing to pursue it. Jensen did not appeal that ruling.

appeals from 'final judgments, orders, and decrees' of bankruptcy courts within the Tenth Circuit."[23] This appeal was timely filed, and neither party elected to have it heard by the United States District Court for the District of Colorado pursuant to 28 U.S.C. § 158(c). Accordingly, the parties have consented to appellate review by this Court.

A decision is considered final "if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'"[24] In this case, the order and judgment of the bankruptcy court terminated the adversary proceeding. Nothing remains for the bankruptcy court's consideration. Thus, the decision is final for purposes of review.[25]

The "determination of dischargeability of a debt is the resolution of a legal issue based on the facts presented," rendering the issue a mixed question of law and fact.[26] "[T]he standard of review for a mixed question all depends–on whether answering it entails primarily legal or factual work."[27] Legal conclusions are reviewed de novo, giving

---

[23]    *Straight v. Wyo. Dep't of Trans. (In re Straight)*, 248 B.R. 403, 409 (10th Cir. BAP 2000) (first quoting 28 U.S.C. § 158(a)(1), and then citing 28 U.S.C. § 158(b)(1), (c)(1) and Fed. R. Bankr. P. 8002).

[24]    *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996) (quoting *Catlin v. United States*, 324 U.S. 229, 233(1945)).

[25]    *Tanner v. Barber (In re Barber)*, 326 B.R. 463, 466 (10th Cir. BAP 2005) (citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996)).

[26]    *Ibdaiwi v. Sawaged (In re Sawaged)*, No. 10-058, 2011 WL 880464, at *2 (10th Cir. BAP Mar. 15, 2011) (citing *Melquiades v. Hill (In re Hill)*, 390 B.R. 407, 410 (10th Cir. BAP 2008)).

[27]    *U.S. Bank Nat'l Ass'n v. Vill. at Lakeridge, LLC*, 138 S.Ct. 960, 967 (2018).

no special weight to the bankruptcy court's decision.[28] Factual findings are reviewed for clear error.[29] A finding of fact "is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."[30] Additionally, as an appellate court, we must defer to the bankruptcy court's findings when they are based on determinations regarding the credibility of witnesses.[31]

## III. DISCUSSION

"[A] central purpose of the [Bankruptcy] Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.'"[32] But, a completely fresh start is limited to the 'honest but unfortunate debtor.'"[33] The Bankruptcy Code's

---

[28] *In re Arenas*, 535 B.R. 845, 849 (10th Cir. BAP 2015) (citing *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991)).

[29] *Id.* (citing *Las Vegas Ice & Cold Storage Co. v. Far W. Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990)).

[30] *Lang v. Lang (In re Lang)*, 293 B.R. 501, 508 (10th Cir. BAP 2003) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

[31] *Vaughn v. United States (In re Vaughn)*, 765 F.3d 1174, 1180 (10th Cir. 2014) (citing *Anderson v. Bessemer City*, 470 U.S. 564, 575 (1985)).

[32] *Grogan v. Garner*, 498 U.S. 279, 286 (1991) (quoting *Local Loan Co. v. Hunt,* 292 U.S. 234, 244 (1934)).

[33] *Grogan*, 498 U.S. at 286-87 (citing *Local Loan Co.*, 292 U.S. at 244).

nondischargeability provisions reflect Congress' decision to exclude certain categories of debts from discharge.[34] Many of the provisions in § 523(a) aim to prevent discharge of debts involving a debtor's unacceptable conduct, such as dishonesty, fraud, or intentional injury. But absent these circumstances, debts arising from breach of contract are dischargeable.[35]

Because of the Bankruptcy Code's fresh start policy, exceptions to discharge must be narrowly construed with doubt being resolved in the debtor's favor.[36] Moreover, it is the **creditor** seeking to except a debt from discharge that **has the burden of proving each element** of its claim by a preponderance of the evidence.[37] As this Court has previously explained, "[u]nder these principles, proving a debt to be non-dischargeable at trial is an uphill battle. Moreover, . . . obtaining an appellate court reversal of a bankruptcy court's

---

[34]     *Grogan*, 498 U.S. at 287.

[35]     *See, e.g.*, *Cobra Well Testers, LLC v. Carlson (In re Carlson)*, No. 06-8158, 2008 WL 8677441, at *3 (10th Cir. Jan. 23, 2008) (quoting *Williams v. Zachary (In re Zachary)*, 147 B.R. 881, 883 (Bankr. N.D. Tex. 1992) (The "mere inability or failure to perform is not, in itself, sufficient evidence of fraudulent intent [for purposes of § 523(a)(2)(A)]."); *Hatfield v. Thompson (In re Thompson)*, 555 B.R. 1, 9 (10th Cir. BAP 2016) (debts arising from breach of contract may be nondischargeable under § 523(a)(2)(A) if fraud is proven); *Reperex, Inc. v. May (In re May)*, 579 B.R. 568, 593 (Bankr. D. Utah 2017) (citing *Sierra Chems., LLC v. Mosley (In re Mosley)*, 501 B.R. 736, 744 (Bankr. D. N.M. 2013) (breach of contract may fall within § 523(a)(6) if it constitutes a willful and malicious injury).

[36]     *Affordable Bail Bonds, Inc. v. Sandoval (In re Sandoval)*, 541 F.3d 997, 1001 (10th Cir. 2008) (quoting *Bellco First Fed. Credit Union v. Kaspar (In re Kaspar)*, 125 F.3d 1358, 1361 (10th Cir. 1997)).

[37]     *Grogan*, 498 U.S. at 287.

decision that the debtor prevailed in that battle is even more difficult."[38]

A. The Bankruptcy Court Did Not Err in Concluding the Pinos Failed to Establish a Claim Under § 523(a)(2)(A).

Section 523(a)(2)(A), one of the most utilized nondischargeability provisions, prevents the discharge of debts involving a debtor's dishonesty. "Congress concluded that preventing fraud is more important than letting defrauders start over with a clean slate."[39] Section 523(a)(2)(A) excepts from discharge a debt for money, property, or services obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."[40] Thus, § 523(a)(2)(A) encompasses fraudulent representations as well as other forms of actual fraud that can be effected without a false representation.[41] The Pinos' § 523(a)(2)(A) claim is brought on the basis of both false representations and actual fraud.

1. False Representations

The elements of a § 523(a)(2)(A) claim based on false representations are: 1) the debtor made a false representation; 2) the debtor made the representation with the intent to deceive the creditor; 3) the creditor relied on the debtor's representation; 4) the

---

[38] *Meyer v. Hobi (In re Hobi)*, No. WO-11-025, 2011 WL 5869488, at *4 (10th Cir. BAP Nov. 23, 2011).

[39] *McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000) (quoting *In re Mayer*, 51 F.3d 670, 674 (7th Cir. 1995)).

[40] 11 U.S.C. § 523(a)(2)(A).

[41] *Husky Int'l Elects., Inc. v. Ritz*, 136 S.Ct. 1581, 1586 (2016).

11

creditor's reliance was justifiable; and 5) the creditor was damaged as a proximate result.[42]  "'False pretenses' or 'representations' are representations knowingly and fraudulently made that give rise to the debt."[43]  The Pinos assert Jensen made numerous forms of false representations that the bankruptcy court categorized into five groups:  the Draw Representations, the Shelf Representations, the Deadline Representations, the Supervision Representations, and the Code Representations.

### a. Draw Representations

As explained above, the Contract provided for payment through monthly construction draws following submission of a draw schedule, but the parties subsequently agreed to payments on a "schedule of completion."[44]  A review of the invoices, however, indicates a combination of the two methods was seemingly randomly utilized, and the Pinos paid the invoices regardless.  With respect to the invoices that simply stated "Construction Draw," the bankruptcy court found no representations were made by NCB or Jensen.  With respect to the invoices that contained details about materials or labor, the bankruptcy court found no evidence had been presented to prove that the representations

---

[42]  *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1373 (10th Cir. 1996) (citing *Grogan v. Garner*, 498 U.S. 279, 287(1991)), as modified by *Field v. Mans*, 516 U.S. 59, 70 (1995).  In *Mans*, the United States Supreme Court adopted the same test, except that the reliance standard to be used is the less stringent subjective standard of "justifiable" reliance, rather than the objective standard of "reasonable" reliance.  Notwithstanding the decision of the Tenth Circuit in *Young*, this Court will use the justifiable reliance standard adopted by the United States Supreme Court.

[43]  *Cobb v. Lewis (In re Lewis)*, 271 B.R. 877, 885 (10th Cir. BAP 2002).

[44]  Exhibit 1-3 (Contractor Agreement), *in* Appellants' App. at 554.

12

were false.  Additionally, the bankruptcy court found that NCB did not bill for categories of work it did not perform.  Further, the bankruptcy court concluded that even if false representations were made, Jensen did not make them with the requisite intent to deceive, and the Pinos did not actually or justifiably rely on the representations.

On appeal, the Pinos complain the bankruptcy court did not consider the entirety of the evidence and testimony, but instead narrowly viewed the Draw Representations "without putting them into their appropriate context."[45]  In their brief, the Pinos state that "[w]ith each construction draw invoice . . . the Pinos were continuously *under the impression* that the money owed was to cover materials and work that had been completed or purchased. . . . [A]nd therein was the creation of the false representation."[46]  Thus, the Pinos' own post-trial statement supports the bankruptcy court's conclusions that either Jensen made no representations in the context of a "construction draw" type invoice, or that even if representations were made in a "schedule of completion" type invoice, the Pinos did not justifiably rely on them.

b.    Shelf Representations

In their brief, the Pinos' nondischargeability claim under § 523(a)(2)(A) with respect to the Shelf Representations is based (i) specifically on their allegation that they paid for a granite slab that was never installed, and (ii) generally on their allegations that

---

[45]    Appellants' Br. 12.

[46]    Appellants' Br. 13.

Jensen purchased and stored items on their behalf.[47]  The Shelf Representation arguments, however, are not supported by evidence.

As to the granite slab, the evidence is that Mrs. Pino selected a granite slab but that Jensen and/or NCB never installed the slab or provided it to the Pinos before or after NCB was fired from the Project.  However, there is no evidence that (i) Jensen (or NCB) ever invoiced the Pinos for the granite slab, or (ii) Jensen verbally communicated to the Pinos that he had obtained the finished granite slab and was storing it for them, and the Pinos fail to identify any such evidence in their brief.  As a result, the bankruptcy court did not err in finding that there was no misrepresentation made by Jensen as to the granite slab, but simply a failure by Jensen to complete the purchase of the granite slab.  The "'mere inability or failure to perform is not, in itself, sufficient evidence' to satisfy § 523(a)(2)(A)."[48]  While fraudulent intent may be inferred from the circumstances, any doubt must be resolved in the debtor's favor.[49]

Similarly, with respect to other items allegedly purchased and stored by Jensen, the Court sees no error in the bankruptcy court's finding that the Pinos failed to present any evidence of Jensen representing that he was purchasing items to store on behalf of the Pinos and then failed to do so.  A thorough review of the voluminous record, combined

---

[47]     Appellants' Br. 16-17.

[48]     *Meyer v. Hobi (In re Hobi)*, No. WO-11-025, 2011 WL 5869488, at *5 (10th Cir. BAP  Nov. 23, 2011) (quoting *Cobra Well Testers, LLC v. Carlson (In re Carlson)*, No. 06-8158, 2008 WL 8677441, at *3 (10th Cir. Jan. 23, 2008)).

[49]     *Id.*

with the Pinos' lack of citation to any evidence of misrepresentations by Jensen in this regard, supports the bankruptcy court's conclusion that Jensen did not make any such misrepresentations to the Pinos.

Finally, given the absence of any misrepresentations, it simply follows that the bankruptcy court also correctly determined that Jensen lacked any intent to mislead the Pinos, and that the Pinos did not rely on such misrepresentations.

### c. Deadline Representations

At trial, the Pinos argued Jensen misrepresented the date by which the Project would be completed. The bankruptcy court concluded that Jensen's promise to perform could not be a false representation actionable for fraud if he intended to perform at the time the promise was made. The bankruptcy court found no evidence that Jensen intentionally misled the Pinos about the completion date for the Project. Instead, the bankruptcy court found some delays were attributable to design changes instigated by the Pinos, and others to an inability to hire and retain qualified subcontractors in the Denver area, both of which are types of delays beyond Jensen's control.

To the extent Jensen was responsible for delaying completion of the Project, the bankruptcy court found that Jensen may have been in over his head on the Project, but his conduct was negligent at worst. However, evidence that Jensen failed to complete the Project per the Contract and specifications does not necessarily establish that he did not have the intention to complete the Project as promised when promised. The Pinos' evidence, without more, suggests only that Jensen is perhaps "a poor construction

15

estimator or project manager,"[50] but not that he is guilty of fraudulent behavior.

In the absence of a deliberate, intentional misrepresentation regarding Project deadlines, or reckless disregard of the facts, the bankruptcy court correctly concluded the Pinos did not state a claim under § 523(a)(2)(A) with respect to the Deadline Representations.

d. <u>Supervision Representations</u>

At trial, the Pinos argued Jensen was not entitled to supervision pay and his requests for supervision pay constituted false representations. The bankruptcy court determined Jensen in fact supervised the work done by NCB and its subcontractors, and was entitled to be compensated for said supervision.

On appeal, the Pinos contend that Jensen is entitled to supervision pay, but only "for the times of actual supervision [but] not [ ] a flat cut where he was not on the job or where supervision could have prevented many of the mistakes discovered later."[51] In essence, the Pinos accuse Jensen of not actually supervising the work being performed on the Project, or not supervising the work in an appropriate manner.[52] The Pinos further argue "Jensen's intent to deceive with taking monthly supervision fees becomes immensely apparent with the length of time the Project took."[53]

---

[50] *Id.* at *6.

[51] Appellants' Br. 23.

[52] *Id.* at 24.

[53] *Id.* at 23.

To support their allegations of misrepresentations by Jensen, the Pinos point to the construction draw invoices including charges for "supervision fees" or Monthly Expenditure Histories containing the notation "Jensen Labor."[54] But reliance on such as a basis for their § 523(a)(2)(A) claim is problematic. No evidence in the record suggests, much less establishes by a preponderance of the evidence, that the Pinos reviewed and relied on the Monthly Expenditure Histories prior to making payment to NCB.[55]

Moreover, no evidence suggests that Jensen did not actually supervise the work being performed or hire appropriate subcontractors. Dr. Pino was not in a position to have specific knowledge about Jensen's actual presence on the Project supporting the supervision charges. This is because of the seven invoices in question, six of them were submitted in 2014, and therefore predated Dr. Pino's heavy involvement and presence at the Project in the fall of 2015.[56] Finally, and perhaps most importantly, the parties did not specifically establish, either in the Contract or otherwise, what constituted "supervision" by Jensen. In fact, during his testimony at trial, Dr. Pino could not clearly describe what he expected Jensen's "supervision" to be.[57] Such being the case, the bankruptcy court did

---

[54]     *Id.* (referencing Exhibit 2-1 (Monthly Expenditure History), *in* Appellants' App. at 562).

[55]     In fact, Jensen testified that he did not provide the Monthly Expenditure History to the Pinos. Transcript Day 2 at 136, *in* Appellants' App. at 456.

[56]     Exhibit 7 (Invoices) at 1-5, 7, *in* Appellants' App. at 1049-1053, 1055; Exhibit 9 (Invoices) at 9, *in* Appellants' App. at 1106.

[57]     Transcript Day 1 at 38, *in* Appellants' App. at 123.

17

not err in concluding that Jensen did not make false or fraudulent "Supervision Representations," or that he lacked any fraudulent intent in invoicing the Pinos for supervision.

### e.   Code Representations

The Pinos accuse Jensen of falsely representing that all work done by NCB met applicable building code standards. First and foremost, Jensen made no express representation to the Pinos that the Project would be completed in compliance with the applicable building code. The Pinos' rely on the Contract as the source of the alleged misrepresentation. However, the Contract itself does not make such representation. Instead, it is the architect's building plans, incorporated into the Contract, which expressly stated that compliance with the code was mandatory.[58] But this representation was not made by Jensen, and any intent in making such representation cannot be attributed to him. Further, no executed copy of the Contract on which the Pinos rely was ever introduced into evidence.

Second, the bankruptcy court concluded Jensen credibly testified that, when NCB was terminated, all completed work had passed all applicable inspections at that time. As the Project was not completed at NCB's termination and no certificate of occupancy had been sought, obtained or denied,[59] the bankruptcy court also reasonably found that Jensen

---

[58]   Appellants' Br. 25.

[59]   Exhibit 13 (email) at 133, *in* Appellants' App. at 1400 (email dated Oct. 24, 2016, explaining work would be done that would allow obtaining certificate of occupancy).

18

intended to complete work according to the applicable building code. As an appellate court, we must give great deference to the bankruptcy court's factual findings that are based on credibility of the witnesses.[60] Moreover, there was simply no evidence presented to the contrary.

To the extent that Red Corp. "fixed" any issues during the course of its work after NCB was terminated, the bankruptcy court determined Jensen was not aware of those problems and, therefore, was unable to make any deliberately false representations regarding code compliance. Again, perhaps Jensen was negligent, but the bankruptcy court finding that he did not intentionally make false representations to the Pinos as to the Project's code compliance is not clearly erroneous.

Consequently, the bankruptcy court correctly concluded that the Pinos failed to satisfy the requirements of a § 523(a)(2)(A) claim as to the Code Representations.

### 2. Actual Fraud

On appeal, the Pinos also argue the bankruptcy court erred in finding that NCB and Jensen did not commit actual fraud. "'[F]raud' connotes deception or trickery generally," and actual fraud "involv[es] moral turpitude or intentional wrong."[61] "Actual fraud occurs 'when a debtor intentionally engages in a scheme to deprive or cheat another

---

[60] *Wagner v. Wagner (In re Wagner)*, 527 B.R. 416, 432 (10th Cir. BAP 2015) (citing *Vaughn v. United States (In re Vaughn)*, 765 F.3d 1174, 1180 (10th Cir. 2014)).

[61] *Husky Int'l Elects., Inc. v. Ritz*, 136 S.Ct. 1581, 1586 (2016) (quoting *Neal v. Clark*, 95 U.S. 704, 709 (1878)).

of property or a legal right.'"[62]  Thus, establishing a prima facie case for actual fraud under § 523(a)(2)(A) "requires proof of three elements: 1) fraudulent intent; 2) a fraudulent scheme; and 3) injury caused by the scheme."[63]

Neither the Pinos' Complaint, nor the closing argument they filed with the bankruptcy court following trial, clearly point to any particular actions taken by NCB or Jensen that possibly constitute actual fraud as opposed to false representations.  After hearing testimony at trial, the bankruptcy court concluded the Pinos had not met their burden of demonstrating actual fraud under § 523(a)(2)(A).  In the Pinos' brief on appeal, the only apparent allegation of actual fraud is that the house was not "built properly or safely and up to code."[64]  And their primary complaint is that the bankruptcy court "only reflects upon the mental state, finding that Jensen did not have it, and no further analysis is given under this claim."[65]  However, the Pinos fail to understand that in absence of proof that Jensen had the requisite "intent to defraud," they have no claim for actual

---

[62]     *Bank of Cordell v. Sturgeon (In re Sturgeon)*, 496 B.R. 215, 223 (10th Cir. BAP 2013) (quoting *Mellon Bank, N.A. v. Vitanovich (In re Vitanovich)*, 259 B.R. 873, 877 (6th Cir. BAP 2001)).

[63]     *Cherry v. Neuschafer (In re Neuschafer)*, Nos. KS-13-030, KS-13-035, 2005 WL 2611258, at *5 (10th Cir. BAP June 12, 2014).  *See also Fifth Third Mortg. Co. v. Kaufman*, No. 12C4693, 2017 WL 4021230, at *14 (N.D. Ill. July 25, 2017) ("In order to except a debt from discharge on the basis of actual fraud, a creditor must establish that (1) a fraud occurred, (2) the debtor intended to defraud, and (3) the fraud created the debt that is the subject of the dispute." (quoting *Sullivan v. Glenn*,  502 B.R. 516, 531 (Bankr. N.D. Ill. 2013), *aff'd*, 526 B.R. 731 (N.D. Ill 2014), *aff'd*, 782 F.3d 378 (7th Cir. 2015))).

[64]     Appellants' Br. 27.

[65]     *Id.*

fraud, and no further analysis by the bankruptcy court was necessary.

Further, the Pinos miscomprehend an appellate court's role. In their brief, they "respectfully request this Court review *de novo* the claim for actual fraud and find that the three elements were presented by a preponderance of evidence at trial."[66] An appellate court does not decide factual issues *de novo*, as duplicating the role of the trial court would be to overstep its authority.[67] "[T]he essential role of an appellate court is to review for errors. . . ."[68] But, even if the Pinos had specifically argued the bankruptcy court had erred in concluding the elements of fraud were not met, they do not direct this Court's attention to any specific portions of the record that would demonstrate such error.[69]

Accordingly, the bankruptcy court did not err in determining the Pinos failed to

---

[66] *Id.*

[67] *Iverson v. Jawort (In re Iverson)*, No. 01-018, 2001 WL 863444, at *6 (10th Cir. BAP July 31, 2001).

[68] *Dague v. City of Burlington*, 976 F.2d 801, 803 (2d Cir. 1991).

[69] As further evidence that the Pinos' misunderstand the appellate process, the Court would note the following statement in their reply brief: "For Issues II, III, IV and V, Appellants find that Appellee relied upon the Bankruptcy Court's findings too heavily and did not provide further evidence that the Bankruptcy Court did not err on each of those accounts. As such, the Pinos respectfully request this Bankruptcy Appellate Panel find in their favor regarding Issue II finding for fraud under 11 U.S.C. § 523(a)(2)(A), which went unaddressed by Appellees; Issue III finding for fraud or defalcation while acting in a fiduciary capacity under 11 U.S.C. § 523(a)(4); Issue IV finding for embezzlement under 11 U.S.C. § 523(a)(4), and Issue V finding for willful and malicious injury under 11 U.S.C. § 523(a)(6)." Appellants' Reply Br. 6. An appellee, of course, does not have the burden of proving that the bankruptcy court did not commit error.

prove actual fraud by a preponderance of the evidence.

  B.  The Bankruptcy Court Did Not Err in Concluding the Pinos Failed to
      Establish a Claim Under § 523(a)(4).

Pursuant to § 523(a)(4), a debtor's discharge does not apply to debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."  The Pinos argue Jensen owes them a debt that is nondischargeable on the basis of both a defalcation while acting in a fiduciary capacity and embezzlement.

  1.  Defalcation in Fiduciary Capacity

To state a claim under § 523(a)(4) for fraud while acting in a fiduciary capacity, "a plaintiff must allege that:  (1) a fiduciary relationship existed between the debtor and the creditor, and (2) the debt owed to the creditor is attributable to a fraud or defalcation committed by the debtor in the course of the fiduciary relationship."[70]  Section 523(a)(4)'s definition of "fiduciary duty" is a narrow one that excludes many ordinary commercial relationships.[71]  "A mere contractual relationship is less than what is required to establish the existence of a fiduciary relationship."[72]  In the Tenth Circuit, an express or technical trust is required for a fiduciary relationship, and neither a general fiduciary duty of confidence, trust, loyalty, and good faith, nor an inequality between the parties, will give

---

[70]  *Barenberg v. Burton (In re Burton)*, No-CO-10-022, 2010 WL 3422584, at *5 (10th Cir. BAP Aug. 31, 2010).

[71]  *Webb v. Isaacson (In re Isaacson)*, 478 B.R. 763, 780 (Bankr. E.D. Va. 2012).

[72]  *Zio Johnos, Inc. v. Ziadeh (In re Ziadeh)*, 284 B.R. 893, 899 (Bankr. N.D. Iowa 2002) (citing *Werner v. Hofmann*, 5 F.3d 1170, 1172 (8th Cir. 1993)).

22

rise to a claim under § 523(a)(4).[73] Further, the trust creating the fiduciary capacity must have been expressly established or imposed prior to the alleged tortious action that created the debt.[74] Federal law determines the existence of a fiduciary relationship for purposes of § 523(a)(4); however, state law is also relevant to the inquiry.[75]

Under Colorado law, the creation of an express trust requires language or conduct that is unequivocal and unambiguous.[76] The bankruptcy court concluded no express trust existed because the Pinos offered nothing establishing an intent to create a trust, a clearly defined trust *res*, or specific trust duties. On appeal, the Pinos assert only that Jensen had an "express trust fiduciary relationship with the Pinos" because he received the construction draw checks and the controlled the finances of NCB.[77] The Pinos are incorrect – without more, the relationship between the parties was contractual only, not fiduciary in nature.[78]

---

[73]    *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1371-72 (10th Cir. 1996).

[74]    *Id.* at 1372.

[75]    *Id.* at 1371.

[76]    *Pacini v. Ennis (In re Ennis)*, No. 10-01458, 2012 WL 3727324, at *5 (10th Cir. BAP Aug. 29, 2012) (citing *Morgan v. Wright*, 399 P.2d 788, 790-91 (Colo. 1965)).

[77]    Appellants' Br. 28.

[78]    Despite the fact that the Pinos cited to no applicable state statute that might give rise to a technical trust, the bankruptcy court analyzed the possibility of a technical trust established under the Colorado Mechanics Lien Trust Fund Statute, Colo. Rev. Stat. § 38-22-127. It concluded, however, that the statute's purpose is to protect laborers and suppliers, not Jensen's contractual obligation to the Pinos, and further that the Pinos did not have standing under the statute because all material suppliers and subcontractors had

In the absence of proof of a technical or express trust, the bankruptcy court correctly concluded that the Pinos have no nondischargeability claim under § 523(a)(4) based on fraud or defalcation while acting in a fiduciary capacity.

## 2.    Embezzlement

Embezzlement is defined under federal common law as the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come.[79]  The five elements of embezzlement are:  (1) entrustment (2) of property (3) of another (4) that is used or consumed for a purpose other than that for which it is entrusted (5) with fraudulent intent.[80]   Embezzlement requires fraud in fact rather than implied or constructive fraud.[81]  The intent requirement of

---

been paid.  On appeal, the Pinos do not directly take issue with the bankruptcy court's conclusion in this regard, stating only that Jensen breached his fiduciary duty "through commingling different project funds, resulting in the failure to pay suppliers of materials, laborers, and other subcontractors of the Project, and Jensen's overall inability to account for the Pino funds."  Appellants' Br. 29.  This Court declines to address the argument further, as no liens were filed on the Project, and the Pinos submitted no other proof of unpaid suppliers or subcontractors to the bankruptcy court.

[79]     *Bombardier Capital, Inc. v. Tinkler (In re Tinkler)*, 311 B.R. 869, 876 (Bankr. D. Colo. 2004) (citing *Klemens v. Wallace (In re Wallace)*, 840 F.2d 762, 765 (10th Cir. 1988)). *See also Alternity Capital Offering 2, LLC v. Ghaemi (In Re Ghaemi),* 492 B.R. 321, 325 (Bankr. D. Colo. 2013); *DRCK, LLC v. Chong (In re Chong)*, 523 B.R. 236, 249 (Bankr. D. Colo. 2014).

[80]     *Tinkler*, 311 B.R. at 876.

[81]     *Id.* at 876-77 (citing *Driggs v. Black (In re Black)*, 787 F.2d 503, 507 (10th Cir. 1986)).

embezzlement under § 523(a)(4) is an "'intent to permanently deprive.'"[82]  Thus,

embezzlement requires a wrongful intent to deprive.[83]

The bankruptcy court concluded that the Pinos did not demonstrate Jensen used

their funds for purposes outside the scope of the Contract.  Materials were purchased,

subcontractors were paid, and a substantial portion of the Project was completed.  Jensen

was also paid, as anticipated by the Contract.  Further, the bankruptcy court specifically

found that, at all times prior to termination of NCB, Jensen intended to complete the

agreed-upon work at the agreed-upon price.

On appeal, the Pinos continue to maintain that funds were embezzled, stating

"Jensen did not know whose funds were coming in to the bank statement and where those

funds were then going," and expressing their "concern for the way money out of this

business checking account was spent."[84]  However, having brought an adversary

proceeding against Jensen, it was the Pinos' burden to show that he misappropriated the

funds, not Jensen's burden to produce invoices and receipts that account for every dollar

they paid him.   Again, the Pinos failed to meet their burden.

Accordingly, the bankruptcy court did not err in denying the Pinos' § 523(a)(4)

claim against Jensen for embezzlement of funds.

---

[82]  *MacArthur Co. v. Cupit (In re Cupit)*, 514 B.R. 42, 59 (Bankr. D. Colo. 2014) (citing *Ghaemi*, 492 B.R. at 327 (citing 3 Charles E. Torcia, Wharton's Criminal Law § 385 (15th ed. 1993)).

[83]  *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 274-75 (2013).

[84]  Appellants' Br. 31.

C.      The Bankruptcy Court Did Not Err in Concluding the Pinos Failed to Establish a Claim Under § 523(a)(6).

Section 523(a)(6) generally relates to torts as opposed to contracts or breaches of duty[85] and excepts from discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."[86] "An intentional breach of contract, without more, is insufficient to sustain a non-dischargeable claim under [ ] § 523(a)(6)."[87] To prevail under § 523(a)(6), a creditor must prove both a **willful act** and a **malicious injury**.[88] Thus, an intentional tort is required, and debts resulting from recklessness or negligence are not within the scope of § 523(a)(6).[89]

The standard for a successful claim under § 523(a)(6) is a stringent one and requires that the debtor's objectionable conduct must have caused "willful and malicious injury," i.e. "that the actor intend the *consequences* of an act, not simply the act itself."[90] Because "the debtor must desire to cause the consequences of his act or believe that the

---

[85]     *Lockerby v. Sierra*, 535 F.3d 1038, 1040-41 (9th Cir. 2008).

[86]     11 U.S.C. § 523(a)(6).

[87]     *May v. Cagan (In re Cagan)*, No. 09-1202J, 2010 WL 3853316, at *3 (Bankr. D. N.M. Sept. 28, 2010) (citing multiple authorities for the premise that merely intentional breaches of contract are still discharged).

[88]     *Panalis v. Moore (In re Moore)*, 357 F.3d 1125, 1129 (10th Cir. 2004).

[89]     *Barenberg v. Burton (In re Burton)*, No. CO-10-022, 2010 WL 3422584, at *6 (10th Cir. BAP Aug. 31, 2010) (citing *Kawaauhau v. Geiger*, 523 U.S. 57, 64 (1998)).

[90]     *Berrien v. Van Vuuren*, 280 F. App'x 762, 766 (10th Cir. 2008) (citing *Kawaauhau*, 523 U.S. at 61-62)).

26

consequences are substantially certain to result from it,"[91] a creditor must prove facts that support a reasonable inference that a debtor deliberately or intentionally caused injury to the creditor.[92]

The Tenth Circuit applies a subjective standard in determining whether a debtor desired to cause injury or believed the injury was substantially certain to occur.[93] "When injury was 'neither desired nor in fact anticipated by the debtor,' it is outside the scope of the statute."[94]

The bankruptcy court concluded the Pinos did not establish a § 523(a)(6) claim, again finding that, at all relevant times before NCB was terminated, Jensen had a good faith intention to finish the work to the Pinos' satisfaction and at no time did he intend to harm the Pinos. In their brief, the Pinos argue the bankruptcy court "does not establish enough findings of fact to support their conclusion that the Pinos did not meet their burden of proof for willful and malicious injury, nor did the court go through an analysis of the elements of the claim but a mere recitation of the elements and statements that the

---

[91]     *Berrien*, 280 F. App'x at 766 (citing *Moore*, 357 F.3d at 1129).

[92]     *Barenberg*, 2010 WL 3422584, at *6 (citing *Kawaauhau*, 523 U.S. at 61).

[93]     *Utah Behavior Serv. Inc. v. Bringhurst (In re Bringhurst)*, 569 B.R. 814, 823 (Bankr. D. Utah 2017) (citing *Via Christi Reg'l Med. Ctr. v. Englehart (In re Englehart)*, No. 99-3339, 2000 WL 1275614, at *3 (10th Cir. Sep. 8, 2000) (the willful and malicious injury exception focuses on the debtor's state of mind)); *Murphy v. Spencer (In re Spencer)*, 541 B.R. 750, 758 (Bankr. D. N.M. 2015).

[94]     *Englehart*, 2000 WL 1276514, at *3 (quoting *Kawaauhau*, 523 U.S. at 62).

Pinos did not prove the elements."[95]  According to the Pinos, "Jensen willfully ignored the architectural plans by Mr. Abraham and the Pinos.  The act of Jensen ignoring the Plans and the guiding codes applicable to the Project was willful on his part," and was done intentionally "to harm the Pinos by cutting costs, extending the time on the job so he could figure out a way to pay for this job and other jobs, and spending the Pinos' money on himself."[96]  The bankruptcy court found (i) the Pinos failed to establish that Jensen intended to harm the Pinos, and (ii) Jensen, prior to NCB's termination, had the good faith intention to finish the Project to their satisfaction.  The record on appeal before this Court  contains no evidence to controvert the bankruptcy court's findings.

In their closing argument, the Pinos calculate their § 523(a)(6) claim damages as the cost of remediation and Project completion, the loss of rental income on their loft, and amounts paid for Jensen's supervision of the Project.[97]  For those damages to be excepted from Jensen's discharge, Jensen would have had to intentionally cause these injuries to the Pinos.  Again, the evidence does not support a finding of intent on Jensen's part. Until terminated by the Pinos, NCB and Jensen worked, albeit slowly, towards completion of the Project.  Further, all material providers and subcontractors were paid by NCB as no liens were filed against the Project.  Moreover, the bankruptcy court found Jensen to be credible, finding that he "had a good faith intention to finish the work to

---

[95]     Appellants' Br. 32.

[96]     Appellants' Br. 33.

[97]     Plaintiff's Written Closing Argument at 13, *in* Appellants' App. at 33.

Pinos' satisfaction [and] [a]t no time did he intend to harm Pinos."[98]  Similarly, with respect to the withdrawals and distributions made to compensate for supervision of the Project, there is no evidence that Jensen made such withdrawals and distributions with the intent to harm the Pinos, and the Pinos do not and/or can not point to any.

"Under the clearly erroneous standard, an appellate court defers to the trial court's assessments of witness credibility and other disputed facts, and is 'required to view the evidence in the light most favorable to the [ ] court's ruling . . . and must uphold any [ ] court finding that is permissible in light of the evidence.'"[99]  This Court does not have a definite and firm conviction that the bankruptcy court made a mistake in finding that the Pinos failed to establish Jensen had the willful and malicious intent necessary to except a debt from discharge under § 523(a)(6).

In the absence of evidence that Jensen intended to willfully and maliciously injure the Pinos, we conclude the bankruptcy court did not err in denying the § 523(a)(6) claim.

## IV.    CONCLUSION

As the bankruptcy court pointed out, this is not a construction case in which a contractor obtained large sums of money up front and thereafter did little to no work. Jensen did not go on a gambling spree or traveling junket - materials were purchased,

---

[98]    Opinion at 14, *in* Appellants' App. at 69.

[99]    *Meyer v. Hobi (In re Hobi)*, No. WO-11-025, 2011 WL 5869488, at  *6 (10th Cir. BAP Nov. 23, 2011) (citing *In re Ford*, 492 F.3d 1148, 1154 (10th Cir. 2007) (alteration in original).

subcontractors were paid, much of the work was completed, and no liens were filed on the Project. Jensen even declined a bonus offered by the Pinos because he felt he did not deserve it. Although the Project took longer and cost more than originally anticipated by the parties, the Pinos ultimately produced no evidence to prove that NCB or Jensen made false representations with the intent to deceive, committed actual fraud, inappropriately diverted any payments they made, or willfully and maliciously injured them. We find no error in the bankruptcy court's conclusions that the Pinos did not satisfy the requirements of § 523(a)(2)(A), (a)(4), or (a)(6), and therefore, its decision is hereby AFFIRMED.